COMMONWEALTH OF MASSACHUSETTS
THE TRIAL COURT

SUFFOLK, ss.                                    SUPERIOR COURT
                                       BUSINESS LITIGATION SESSION #2

| | |
|---|---|
| JOSEPH IANTOSCA, Individually and as Trustee of the Faxon Heights Apartments Realty Trust and Fern Realty Trust, BELRIDGE CORPORATION, GAIL A. CAHALY, JEFFREY M. JOHNSTON, BELLEMORE ASSOCIATES, LLC, and MASSACHUSETTS LUMBER COMPANY, INC.<br><br>　　　Plaintiffs,<br><br>v.<br><br>BENISTAR ADMIN SERVICES, INC., DANIEL CARPENTER, MOLLY CARPENTER, BENISTAR PROPERTY EXCHANGE TRUST COMPANY, INC., BENISTAR LTD., BENISTAR EMPLOYER SERVICES TRUST CORPORATION, CARPENTER FINANCIAL GROUP, LLC, STEP PLAN SERVICE, INC., BENISTAR INSURANCE GROUP, INC., and BENISTAR 419 PLAN SERVICES, INC.,<br><br>　　　Defendants.<br><br>TRAVELERS INSURANCE COMPANY and UNDERWRITERS AT LLOYDS, LONDON<br><br>　　　Reach and Apply Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

08 - 4700 -*BLS*

## COMPLAINT

### Parties

1.　　Joseph Iantosca is an individual and a resident of the Commonwealth of Massachusetts. Mr. Iantosca also brings this action as trustee of plaintiffs Faxon Heights Apartments Realty Trust and Fern Realty Trust.

2.      Belridge Corporation is a Massachusetts Corporation with a principal place of business at 655 Mathewson Drive, Weymouth, Massachusetts. Mr. Iantosca is the President and sole shareholder of Belridge.

3.      Gail A. Cahaly is an individual residing in Westwood, Massachusetts.

4.      Jeffrey M. Johnston is an individual residing in Boston, Massachusetts.

5.      Bellemore Associates, LLC is a limited liability company organized under the laws of New Hampshire.

6.      Massachusetts Lumber Company, Inc. is a Massachusetts corporation with its principal place of business in Cambridge, Massachusetts.

7.      Defendant Benistar Admin Services, Inc. ("Benistar Admin") is a Delaware corporation with a principal place of business at 100 Grist Mill Road, Simsbury, Connecticut.

8.      Defendant Daniel Carpenter is a natural person residing at 18 Pondside Lane, West Simsbury, Connecticut.

9.      Defendant Molly Carpenter is a natural person residing at 18 Pondside Lane, West Simsbury, Connecticut.

10.     Defendant Benistar Property Exchange Trust Company, Inc. ("Benistar Property") is a Delaware Corporation with a principal place of business at 100 Grist Mill Road, Simsbury, Connecticut.

11.     Defendant Benistar Ltd. is a Delaware Corporation with a principal place of business at 100 Grist Mill Road, Simsbury, Connecticut.

12.     Defendant Benistar Employer Services Trust Corporation ("Benistar Employer Services") is a Delaware corporation with a principal place of business at 100 Grist Mill Road, Simsbury, Connecticut.

2

13.     Defendant Carpenter Financial Group, LLC ("Carpenter Financial") is a Delaware limited liability company with a principal place of business at 100 Grist Mill Road, Simsbury, Connecticut.

14.     Defendant Step Plan Service, Inc. is a Delaware corporation with a principal place of business at 100 Grist Mill Road, Simsbury, Connecticut.

15.     Defendant Benistar Insurance Group, Inc. is a Delaware corporation with a principal place of business at 100 Grist Mill Road, Simsbury, Connecticut.

16.     Defendant Benistar 419 Plan Services, Inc. is a Delaware corporation with a principal place of business at 100 Grist Mill Road, Simsbury, Connecticut.

17.     Reach and apply defendant Travelers Insurance Company is a Connecticut corporation with a principal place of business at One Tower Square, Hartford, Connecticut.

18.     Reach and apply defendant Underwriters at Lloyd's, London is an Illinois corporation with a principal place of business at 181 West Madison Street, Suite 3870, Chicago Illinois.

Facts

19.     Plaintiffs are judgment creditors of defendant Benistar Admin Services, Inc. ("Benistar Admin"). See Exhibit 1, *Amended Judgment*. The judgment exceeds $20 million and was affirmed this year by the Supreme Judicial Court. *Cahaly et al. v. Benistar Property Exchange Trust Company, Inc.*, 451 Mass. 343 (2008.

20.     Plaintiffs are owners and holders of the judgment and said judgment remains in full force and effect.

3

21.    Defendants (collectively the "Benistar Defendants") are plaintiffs in a civil action in the Court of Common Pleas in the Commonwealth of Pennsylvania captioned *Step Plan Service, Inc. et al. v. Koresko Associates*.

22.    On information and belief, the above-referenced matter was settled.

23.    On information and belief, reach and apply defendants Travelers Insurance Company and Underwriters of Lloyds, London agreed to deliver settlement proceeds to the Benistar Defendants.

## COUNT I
### (Reach & Apply)

24.    The plaintiffs hereby restate and reallege the allegations in paragraphs one through twenty-three of this Complaint.

25.    Plaintiffs are judgment creditors of defendants Benistar Admin, Daniel Carpenter, Molly Carpenter, Benistar Property, Benistar Ltd., Benistar Employer Services, and Carpenter Financial. See Exhibit 1.

26.    Upon information and belief, the Benistar Defendants have no liability insurance and no other assets available to satisfy the plaintiffs' judgment.

27.    The Benistar Defendants have right, title or interest in settlement proceeds from *Step Plan Service, Inc. et al. v. Koresko Associates*.

28.    The settlement proceeds are within the Court's power to reach and apply pursuant to G.L. c. 214, § 3(6).

4

## COUNT II
### (Veil Piercing)

29.     The plaintiffs hereby restate and reallege the allegations in paragraphs one through twenty-eight of this Complaint.

30.     Plaintiffs are judgment creditors of defendants Benistar Admin, Daniel Carpenter, Molly Carpenter, Benistar Property, Benistar Ltd., Benistar Employer Services, and Carpenter Financial. See Exhibit 1.

31.     The Court previously determined (as affirmed by Supreme Judicial Court) that the doctrine of corporate disregard applies between and among Benistar Admin, Daniel Carpenter, Molly Carpenter, Benistar Property, Benistar Ltd., Benistar Employer Services, and Carpenter Financial. See Exhibit 2, *Memorandum and Decision and Order on Phase III.*

32.     All other individuals and entities that are plaintiffs in *Step Plan Service, Inc. et al. v. Koresko Associates*, (including Step Plan Service, Inc., Benistar Insurance Group, Inc., Benistar 419 Plan Services, Inc.) either have no legitimate right, title or interest in the settlement proceeds or are subject to the doctrine of corporate disregard.

33.     If any individual or entity other than the plaintiffs' judgment debtors have right, title or interest in the settlement proceeds, all such right, title or interest is within the Court's power to reach and apply under the doctrine of veil-piercing and/or corporate disregard.

WHEREFORE, Plaintiffs respectfully request that the Court:

1.     Pursuant to Mass.R.Civ.P. 65(a), M.G.L. 214, § 3(6), 3(7) and the general equity powers granted this Court pursuant to M.G.L. c. 214, § 1, issue, *ex parte*, a temporary restraining order enjoining and otherwise restraining reach and apply defendants Travelers Insurance Company and Underwriters of Lloyd's, London from selling, conveying, transferring, assigning,

hypothecating, depleting or otherwise disposing of or diminishing any property, right, title or interest, legal or equitable, of the Benistar Defendants.

2.    Enter judgment against the Benistar Defendants on Count I of this Complaint and pursuant to M.G.L. 214, § 3(6), 3(7) and the general equity powers granted this Court pursuant to M.G.L. c. 214, § 1, enter an Order reaching and applying the value of any property, right, title or interest, legal or equitable of the Benistar Defendants in settlement proceeds from *Step Plan Service, Inc. et al. v. Koresko Associates.*

3.    Enter judgment on Count II of this Complaint and disregard the corporate form of any Benistar Defendant that is not currently the plaintiffs' judgment debtor with right, title or interest in the settlement proceeds from *Step Plan Service, Inc. et al. v. Koresko Associates*; and pursuant to M.G.L. 214, § 3(6), 3(7) and the general equity powers granted this Court pursuant to M.G.L. c. 214, § 1, enter an Order reaching and applying the value of any such property, right, title or interest, legal or equitable.

4.    Grant such other relief as the Court may deem just.

**Gail A. Cahaly, Jeffrey M. Johnston, and Bellemore Associates, LLC, Joseph Iantosca, individually and as trustee of Faxon Heights Apartments Realty Trust and Fern Realty Trust, and Belridge Corp., and Massachusetts Lumber Co.,**

By their attorneys,

| | | |
|---|---|---|
| Anthony R. Zelle, BBO #548141 | John E. O'Brien, Jr., BBO 640982 | William C. Nystrom BBO #559656 |
| Zelle McDonough & Cohen LLP | ROBINSON & COLE LLP | Colleen C. Cook BBO #636359 |
| Four Longfellow Place, 35th Floor | One Boston Place, 25th floor | NYSTROM BECKMAN & PARIS |
| Boston, MA 02114 | Boston, Massachusetts 02108 | 10 St. James Avenue, 16th Flr. |
| (617) 742-6520 | (617) 557-5900 | Boston, Massachusetts 02116 |
| | | (617) 778-9100 |

**Dated**: October 23, 2008

6

# Exhibit 1

*Notify*
## 3319

### COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.    *Notice send*
*11-22-04*
*to all parties*

*QU*

SUPERIOR COURT
CIVIL ACTION
NOs. 01-0116BLS2,
01-0229BLS2,01-0330BLS2,
01-0581BLS2, 01-3433BLS2,
01-4305BLS2;
NO. 01-0075 (Norfolk County)
(Consolidated Actions)

GAIL A. CAHALY and others[1]
Consolidated Plaintiffs

vs.

BENISTAR PROPERTY EXCHANGE TRUST CO., INC. and others[2]
Consolidated Defendants

### AMENDED JUDGMENT UNDER MASS. R. CIV. P. 54(b)

These consolidated actions came on for trial before the Court and a jury, and also before the Court, all rights and liabilities of the defendants Benistar Property Exchange Trust Company, Inc., Benistar Ltd., Daniel Carpenter, Benistar Admin Services ("Benistar Admin") Benistar Employer Services Trust Corporation ("BESTCO"), Carpenter Financial Group, LLC ("CFG"), Martin Paley, U.S. Property Exchange, and UBS PaineWebber, Inc., having been determined, and finding no just reason for delay of entry of judgment with respect to the plaintiffs' claims against such defendants, pursuant to Mass. R. Civ. P. 54(b), it is ORDERED and ADJUDGED:

1. The Claims of the Plaintiff Gail Cahaly:

   (a) that judgment enter in favor of the plaintiff Gail Cahaly and against the defendants Benistar Property Exchange Trust Company, Inc. ("Benistar Property"), Benistar Ltd., Daniel Carpenter, Benistar Admin Services ("Benistar Admin") Benistar Employer Services Trust Corporation ("BESTCO"), Carpenter Financial Group, LLC ("CFG"), and U.S. Property Exchange on the plaintiff Cahaly's claims against these defendants under G. L. c. 93A, and the plaintiff Cahaly recover of these defendants, jointly and severally, damages in the amount of $1,984,460.00, with interest from the date of the filing of her

---

[1] Jeffrey M. Johnston; Massachusetts Lumber Company, Inc.; Joseph Iantosca, Individually and as Trustee of the Faxon Heights Apartment Realty Trust and Fern Realty Trust; Belridge Corporation; and Bellemore Associates, LLC.

[2] Benistar Employer Services Trust Corporation; Martin L. Paley; Molly Carpenter; Daniel E. Carpenter, Esq.; UBS PaineWebber, Inc. Carpenter Financial Group, LLC; Benistar Admin Services, Inc.; Jane Doe Affiliates and Subsidiaries of Benistar Defendants and Jane Doe Entities controlled by Daniel Carpenter; Merrill Lynch Pierce Fenner & Smith, Inc.; and U.S. Property Exchange.

# 3320

complaint; attorneys' fees in the amount of $519,782.86; and costs in the amount of $28,614.70;[3]

(b) that judgment enter in favor of the plaintiff Gail Cahaly and against the defendants named in Paragraph 1(a) above on all her other claims against these defendants;

(c) that judgment enter against the plaintiff Gail Cahaly and in favor of the defendant Martin Paley on all the plaintiff's claims against Martin Paley, and that those claims be dismissed; and

(d) that judgment enter against the plaintiff Gail Cahaly and in favor of the defendant UBS PaineWebber, Inc. ("PaineWebber") on all the plaintiff's claims against PaineWebber, and that those claims be dismissed.

## 2. The Claims of the Plaintiff Jeffrey M. Johnston:

(a) that judgment enter in favor of the plaintiff Jeffrey M. Johnston and against the defendants Benistar Property, Benistar Ltd., Daniel Carpenter, Benistar Admin, BESTCO, CFG, and U.S. Property Exchange on the plaintiff Johnston's claims against these defendants under G. L. c. 93A, and the plaintiff Johnston recover of these defendants, jointly and severally, damages in the amount of $1,083,860.00, with interest from the date of the filing of his complaint; attorneys' fees and costs in the amount of $519,782.86; and costs in the amount of $28,614.70, subject to Footnote 3 of this Rule 54(b) Judgment;

(b) that judgment enter in favor of the plaintiff Jeffrey M. Johnston and against the defendants named in Paragraph 2(a) above on all his other claims against these defendants;

(c) that judgment enter against the plaintiff Jeffrey M. Johnston and in favor of the defendant Martin Paley on all the plaintiff's claims against Martin Paley, and that those claims be dismissed; and

(d) that judgment enter against the plaintiff Jeffrey M. Johnston and in favor of the defendant PaineWebber on all the plaintiff's claims against PaineWebber, and that those claims be dismissed.

## 3. The Claims of the Plaintiff Bellemore Associates, LLC:

(a) that judgment enter in favor of the plaintiff Bellemore Associates, LLC ("Bellemore Associates") and against the defendants Benistar Property, Benistar Ltd., Daniel Carpenter, Benistar Admin, BESTCO, CFG, and U.S. Property Exchange on the plaintiff Bellemore Associates' claims

---

[3] The attorneys' fees and costs awarded against these defendants are the same fees and costs awarded in favor of the plaintiffs Jeffrey M. Johnston in Paragraph 2(a) of this Judgment, and in favor of the plaintiff Bellemore Associates, LLC, in Paragraph 3(a) of this Judgment. It is to be understood that each of these plaintiffs is not entitled to recover the attorneys' fees and costs separately. Rather, the defendants are liable, jointly and severally, to these three plaintiffs together for the payment of a total award of attorneys' fees and costs in the amount of $519,782.86 and $28,614.70, respectively.

# 3321

against these defendants under G. L. c. 93A, and the plaintiff Bellemore Associates recover of these defendants, jointly and severally, damages in the amount of $889,318.00, with interest from the date of the filing of its complaint; attorneys' fees in the amount of $519,782.86; and costs in the amount of $28,614.70, subject to Footnote 3 of this Rule 54(b) Judgment;

(b) that judgment enter in favor of the plaintiff Bellemore Associates and against the defendants named in Paragraph 3(a) above on all its other claims against these defendants;

(c) that judgment enter in favor of the plaintiff Bellemore Associates and against the defendant Molly Carpenter on all its claims other than those brought under G. L. c. 93A, and Bellemore Associates recover of the defendant Molly Carpenter damages in the amount of $444,659.00, jointly and severally with the defendants named in Paragraph 3(a) above up to the total of $444,659.00, and with interest and costs from the date of the filing of its complaint; and that judgment enter against the plaintiff Bellemore Associates and in favor of the defendant Molly Carpenter on Bellemore Associates' claims brought under G. L. c. 93A, and those claims be dismissed;

(d) that judgment enter against the plaintiff Bellemore Associates and in favor of the defendant Martin Paley on all the plaintiff's claims against Martin Paley, and that those claims be dismissed; and

(e) that judgment enter against the plaintiff Bellemore Associates and in favor of the defendant PaineWebber on all the plaintiff's claims against PaineWebber, and that those claims be dismissed.

## 4. The Claims of the Plaintiff Massachusetts Lumber Company:

(a) that judgment enter in favor of the plaintiff Massachusetts Lumber Company ("Massachusetts Lumber") and against the defendants Benistar Property, Benistar Ltd., Daniel Carpenter, Benistar Admin, BESTCO, CFG, and U.S. Property Exchange on this plaintiff's claims against these defendants under G. L. c. 93A, and the plaintiff Massachusetts Lumber recover of these defendants, jointly and severally, damages in the amount of $6,474,380.00, with interest from the date of the filing of its complaint; attorneys' fees in the amount of $424,979.05; and costs in the amount of $30,828.00;

(b) that judgment enter in favor of the plaintiff Massachusetts Lumber and against the defendants named in Paragraph 4(a) above on all other claims of Massachusetts Lumber against these defendants;

(c) that judgment enter against the plaintiff Massachusetts Lumber and in favor of the defendant Martin Paley on all the plaintiff's claims against Martin Paley, and that those claims be dismissed; and

(d) that judgment enter against the plaintiff Massachusetts Lumber and in favor of the defendant PaineWebber on all the plaintiff's claims against PaineWebber, and that those claims be dismissed.

## 5. The Claims of the Plaintiff Joseph Iantosca, Individually, and as Trustee of Fatton Heights Apartment Realty Trust and Fern Realty Trust:

3

3322

(a) that judgment enter in favor of the plaintiff Joseph Iantosca, individually, and as Trustee of Faxon Heights Apartment Realty Trust and Fern Realty Trust (collectively, "Iantosca") and against the defendants Benistar Property, Benistar Ltd., Daniel Carpenter, Benistar Admin, BESTCO, CFG and U.S. Property Exchange on Iantosca's claims against these defendants under G. L. c. 93A, and the plaintiff Iantosca recover of these defendants, jointly and severally, damages in the amount of $5,826,613.72, with interest from the date of the filing of Iantosca's complaint; attorneys' fees in the amount of $494,141.00; and costs in the amount of $34,818.05;

(b) that judgment enter in favor of the plaintiff Iantosca and against the defendants named in Paragraph 5(a) above on all other claims of Iantosca against these defendants;

(c) that judgment enter in favor of the plaintiff Iantosca and against the defendant Molly Carpenter on all his claims other than those brought under G. L. c. 93A, and Iantosca recover of the defendant Molly Carpenter damages in the amount of $2,913,306.86, jointly and severally with the defendants named in Paragraph 5(a) up to the total of $2,913,306.86, and with interest and costs from the date of the filing of his complaint; and that judgment enter against the plaintiff Iantosca and in favor of the defendant Molly Carpenter on Iantosca's claims brought under G. L. c. 93A, and those claims be dismissed;

(d) that judgment enter against the plaintiff Iantosca and in favor of the defendant Martin Paley on all the plaintiff's claims against Martin Paley, and that those claims be dismissed; and

(e) that judgment enter against the plaintiff Iantosca and in favor of the defendant PaineWebber on all the plaintiff's claims against PaineWebber, and that those claims be dismissed.

6. The Claims of the Plaintiff Belridge Corporation:

(a) that judgment enter in favor of the plaintiff Belridge Corporation and against the defendants Benistar Property, Benistar Ltd., Daniel Carpenter, Benistar Admin, BESTCO, CFG and U.S. Property Exchange on this plaintiff's claims against these defendants under G. L. c. 93A, and the plaintiff Belridge Corporation recover of these defendants, jointly and severally, damages in the amount of $1,029,668.28, with interest from the date of the filing of its complaint;

(b) that judgment enter in favor of the plaintiff Belridge Corporation and against the defendants named in Paragraph 6(a) above on all other claims of Belridge Corporation against these defendants;

(c) that judgment enter in favor of the plaintiff Belridge Corporation and against the defendant Molly Carpenter on all his claims other than those brought under G. L. c. 93A, and Belridge Corporation recover of the defendant Molly Carpenter damages in the amount of $514,834.14, jointly and severally with the defendants named in Paragraph 6(a) above up to the total of $514,834.14, and with interest and costs from the date of the filing of its complaint; and that judgment enter against the plaintiff Belridge Corporation and in favor of the defendant Molly Carpenter on Belridge Corporation's claims brought under G. L. c. 93A, and those claims be dismissed;

4

# 3323

(d) that judgment enter against the plaintiff Belridge Corporation and in favor of the defendant Martin Paley on all the plaintiff's claims against Martin Paley, and that those claims be dismissed; and

(e) that judgment enter against the plaintiff Belridge Corporation and in favor of the defendant PaineWebber on all the plaintiff's claims against PaineWebber, and that those claims be dismissed.

**8.  The Claims of All Plaintiffs Against the Defendants Jane Doe Affiliates and Subsidiaries of Benistar Defendants and Jane Doe Entities controlled by Daniel Carpenter:**

That judgment enter against all the plaintiffs and in favor of the defendants Jane Doe Affiliates and Subsidiaries of Benistar Defendants and Jane Doe Entities controlled by Daniel Carpenter on all the plaintiffs' claims against these defendants, and that all such claims be dismissed.

BY THE COURT

Margot Botsford
Justice of the Superior Court

Dated: November 18, 2004

5

# Exhibit 2

*Notify*

**3138**

# COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.

SUPERIOR COURT
CIVIL ACTION
NOs. 01-0116BLS2,
01-0229BLS2, 01-0330BLS2,
01-0581BLS2, 01-3433BLS2,
01-4305BLS2;
NO. 01-0075 (Norfolk County)
(Consolidated Actions)

GAIL A. CAHALY and others[1]

Consolidated Plaintiffs

vs.

BENISTAR PROPERTY EXCHANGE TRUST CO., INC. and others[2]

Consolidated Defendants

## MEMORANDUM OF DECISION AND ORDER ON PHASE III

This is Phase III of these consolidated cases. It concerns the plaintiffs' claims that five additional defendants should be held answerable, by piercing the corporate veil, for the verdicts earlier awarded by the jury against the principal defendants. The defendants concerned in this phase are the following: Benistar Ltd.; Benistar Admin Services, Inc. (BASI); Benistar Employer Services Trust Corporation (BESTCO); Carpenter Financial Group, LLC (CFG); and U.S. Property Exchange (U.S. Property) (collectively referred to as the Phase III defendants).

After a jury trial in November and December 2002, the jury found each of the defendants Benistar Property Exchange Trust Co., Inc. (Benistar Property), Daniel Carpenter (sometimes referred to

---

[1]  Jeffrey M. Johnston; Byron Darling; Massachusetts Lumber Company, Inc.; Joseph Iantosca, Individually and as Trustee of the Faxon Heights Apartment Realty Trust and Fern Realty Trust; Belridge Corporation; Bellemore Associates, LLC; and R&B Enterprises.

[2]  Benistar Employer Services Trust Corporation; Martin L. Paley; Molly Carpenter; Daniel E. Carpenter, Esq.; UBS PaineWebber, Inc. Carpenter Financial Group, LLC; Benistar Admin Services, Inc.; Jane Doe Affiliates and Subsidiaries of Benistar Defendants and Jane Doe Entities controlled by Daniel Carpenter; Merrill Lynch Pierce Fenner & Smith, Inc.; and U.S. Property Exchange.

### 3139

hereafter as "Daniel"), and Martin Paley liable for a total of $8,664,150 (not including interest or costs);

at issue were claims of breach of fiduciary duty, misrepresentation, conversion, and breach of contract.

The jury also found the defendant Molly Carpenter (sometimes referred to hereafter as "Molly") liable

to some of the plaintiffs for breach of fiduciary duty.[3]  In Phase II of this case, relating to claims against

these four defendants under G. L. c. 93A, I concluded that Benistar Property, Daniel Carpenter, and

Martin Paley committed unfair or deceptive acts within the scope of the statute, and have awarded

double damages against each of them in the amount of $17,288, 300.[4]   There is no dispute that

Benistar Property is defunct, with no assets and certainly no capacity to answer the judgments that will

be entered against it in this case.

The jury-waived trial on the corporate disregard claims took place on parts of March 11, March

24, and May 30, 2003.[5]  The presentation was entirely documentary.  My findings are set out below,

based on the evidence submitted.  They are followed by a discussion of relevant legal issues.[6]

---

[3]  The jury also found previously Merrill Lynch Pierce, Fenner & Smith (Merrill Lynch) liable, but I previously allowed Merrill Lynch's judgment notwithstanding the verdict.

[4]  The plaintiffs are also entitled to an award of attorneys' fees and expenses on their c. 93A claims; their applications for fees have not yet been submitted.  The final judgment against the defendants who have been found liable under both c. 93A and the plaintiffs' common law claims will award a single set of damages – on the c. 93A claims – to avoid duplication.  See, e.g., *Calimlim v. Foreign Car Ctr., Inc.,* 392 Mass. 228, 235 (1984).  Accord, *Vassallo v. Baxter Healthcare Corp.,* 428 Mass. 1, 23 (1998).

[5]  The court has received a number of inquiries from certain plaintiffs (not from their counsel), who appear to be under the misimpression that the trial of this entire case concluded in December 2002.  That is simply not the case.  The trial of Phase III was originally scheduled for February 2003, but was continued twice or three times, due to difficulties concerning the presentation of the plaintiffs' documentary evidence and then the schedules of counsel.

[6]  The findings are also preceded by consideration of a legal issue.  The Phase III defendants have again moved to dismiss the plaintiffs' claims on a number of bases.  With respect to the issue of service, the motion is denied.  All the parties have been participating in

# 3140

## Findings of Fact

Benistar Ltd. is a Delaware corporation, incorporated on or about May 3, 1995. It has an office in Stamford, Connecticut, but its principal place of business is 507 Hopemeadow Street, Simsbury, Connecticut. Daniel is the sole shareholder of Benistar Ltd. (see ex. 445, schedule E; see also deposition of Daniel Carpenter, pp. 5-6), which he describes in his affidavit of January 29, 2001, as "a holding company owning the stock of several corporations . . . ." (Carpenter aff., ¶ 2.) At all relevant times, Daniel was the chairman and secretary of Benistar Ltd. as well as of the defendant Benistar Property, which itself either a wholly owned subsidiary of Benistar Ltd., wholly owned by Daniel or owned by Daniel and Molly together.[7] Benistar Property is also a Delaware corporation, incorporated on October 7, 1998, and while it had an office in Newton, Massachusetts, its official principal place of business is listed as 507 Hopemeadow Street in Simsbury, Connecticut.

these consolidated cases for a good number of years. The purpose of service is to provide notice and an opportunity to respond. All the defendants have had this opportunity. Dismissal for lack of service of process would be a travesty at this stage. With respect to the defendants' repeated argument for dismissal on the grounds of lack of personal jurisdiction, the motion is also denied (as it has been a number of times in the past). The plaintiffs' theory of personal jurisdiction over the Phase III defendants except U.S. Property (which does not challenge personal jurisdiction) is integrally tied to their argument that the court should pierce the various corporate veils of these entities and should consider them as essentially one with Benistar Property Exchange, or Daniel Carpenter, or Molly Carpenter, or a combination of these three defendants. Case law makes clear that when personal jurisdiction is claimed on such a ground, the inquiry into personal jurisdiction and the merits inquiry into whether there is an appropriate case for corporate disregard are very linked. See, e.g., *Kleinerman v. Morse*, 26 Mass. App. Ct. 819, 822-824 (1989). See also *United Electrical, Radio and Machine Workers of America v. 163 Pleasant Street Corp.*, 960 F.2d 1080, 1091 (1st Cir. 1992); *Snell v. Bob Fisher Enterprises*, 106 F. Supp. 87, 90 (D. Me. 2000). If the plaintiffs have established on the merits the basis for disregarding the corporate form in connection with Benistar Ltd., BASI, BESTCO, and CFG, then they will have satisfied the jurisdictional requirement. At this stage of the case, following the trial(s), it is appropriate to consider the merits.

[7] See Memorandum of Decision and Order on Plaintiffs' Claims Under G.L. c. 93A, dated September 23, 2003, p. 3, note 7.

3

## 3141

Although Daniel states in his sworn affidavit that his wife Molly was not an officer or director

of either Benistar Ltd. or Benistar Property, some of the Merrill Lynch account authorization documents

signed by Daniel and Molly for Benistar Property indicate that Molly was at relevant times the treasurer

and "managing director" of Benistar Property[8] and the managing director of Benistar Ltd. Accordingly,

I find that she was an officer or director of both corporations.

The defendants BASI, BESTCO and CFG are also Delaware corporations, respectively

incorporated on July 18, 1997, October 7, 1998, and January 19, 2000. According to financial

statements of BASI for the year ended January 31, 1999 -- which are the only financial statements for

any of the Phase III defendants or Benistar Property that the defendants have produced -- BASI was at

that time a wholly owned subsidiary of Benistar Ltd. Two witnesses, including the designated Rule

30(b)(6) witness for BASI, Donna Wayne, testified that in early 2000, the ownership of BASI was

transferred to an employee stock ownership plan (ESOP), which was wholly owned by BASI's

employees. However, I am not persuaded that BASI's ownership was transferred to an ESOP.[9]

---

[8] These documents, marked as ex. 401, are dated October 22, 1999 (Molly as treasurer) and June 4, 2000 (Molly as "managing director"). See also Memorandum of Decision and Order on Plaintiffs' Claims Under G.L. c. 93A, dated September 23, 2003, p. 3, note 7.

[9] Despite the two witnesses' testimony about the ESOP, I am not persuaded for the following reasons. (1) The accountant's notes to the BASI financial statements for year ending January 31, 1999, state that as of that date, BASI had no employees of its own, but used the employees of its parent, Benistar Ltd. The financial statements were prepared in the form of a compilation report by Frederick J. Prior, a certified public accountant, based on "information that "is the representation of [BASI's] management." (Ex. 424). (2) Donna Wayne, BASI's Rule 30(b)(6) designee, filed an affidavit in this case dated August 6, 2001 -- more than 18 months following the alleged change in BASI's ownership in February 2000-- in which she describes BASI and never mentions that it is owned by its employees through an ESOP. (3) Further, and significantly, while the plaintiffs requested documents related to the ownership of BASI, no trust or similar documents evidencing the actual creation of the ESOP were produced. (4) Donald Trudeau, identified as the president of BASI, testified that all employees of BASI were entitled to an ownership interest in the corporation as long as they had been working for BASI for at least

4

# 3142

Accordingly, I find that as indicated in the 1999 financial statements prepared by the accountant, BASI

was at all relevant times a wholly owned subsidiary of Benistar Ltd. While there is evidence that Molly

Carpenter is the chairman and secretary of BASI, Donald Trudeau its president and Donna Wayne its

assistant secretary (see documents attached to ex. 426), I am unable to determine whether in fact Daniel

or Molly is secretary, since each purports to have signed different corporate documents on the same day

in that capacity.  (See documents attached to ex. 426.)

Daniel Carpenter is the chairman and secretary of BESTCO, and Molly Carpenter its treasurer.

BESTCO's principal office is also at 507 Hopemeadow Street in Simsbury.  Daniel asked Donald

Trudeau to be BESTCO's designated Rule 30(b)(6) witness.  Trudeau was aware of no officers,

directors, or employees of BESTCO other than Daniel.  BESTCO neither produced in discovery nor

introduced at trial any corporate documents other than its extremely general articles of organization and

perhaps a form set of bylaws.  I infer from the absence of corporate documents and Trudeau's

---

six months and that he himself owned a percentage of the company.  Yet Donna Wayne, who
stated she had worked for BASI since 1997, testified in 2002 that she did not hold any ownership
interest in the company to her knowledge, and Trudeau himself could not give any specific
information about his ownership interest. (5) The only documents in evidence relating to the
creation and organization of BASI include (a) a copy of the certificate of incorporation from
1998, (b) a copy of BASI's bylaws – which make no reference to any ESOP – signed by Molly
Carpenter as the secretary of the BASI  and dated December 29, 2000, (c) a purported
"Certificate of Corporate Resolution" concerning the ESOP, signed by Daniel, also as the
secretary of BASI and also dated December 29, 2000, and (d) a copy of a "written consent of sole
shareholder," dated December 29, 2000, identifying the directors and officers of BASI, and
signed by Daniel Carpenter as representative of BESTCO, which is identified there as the trustee
of the BASI employee stock ownership plan. (6) Finally, the appalling lack of knowledge about
BASI that was demonstrated by its official Rule 30(b)(6) designee, Donna Wayne, as well as its
alleged president, Donald Trudeau; their consistent testimony that Molly Carpenter was the
person who was in charge of all financial aspects of the company and, according to Wayne, the
principal person running the company; and the adverse inference that I draw from Molly's failure
to appear and testify as a witness at Phase III (or indeed any other phase) of this trial, are further
bases for discrediting the ESOP ownership theory advanced by the defendants.

5

## 3143

incredibly uninformed Rule 30(b)(6) testimony that BESTCO is owned by Daniel or perhaps by Daniel

and Molly. Trudeau was also the designated Rule 30(b)(6) witness for CFG – again at Daniel

Carpenter's request – but, if possible, knew even less about CFG than he did about BESTCO; his

knowledge was confined to the fact that Daniel was an officer or director. CFG produced no corporate

documents beyond its articles of organization (which provide no useful information about ownership or

business). I draw the inference that CFG is owned by Daniel.

Benistar Property's business was to serve as a qualified intermediary for holding the funds --

proceeds from real estate sales -- of persons seeking to effectuate a tax-deferred property exchange

under § 1031 of the Internal Revenue Code. Daniel Carpenter (and to some extent Molly) assumed

control over and managed all such funds entrusted to Benistar Property by the plaintiffs and other

clients. Daniel opened accounts at Merrill Lynch and later at PaineWebber in the name of Benistar

Property into which he deposited the plaintiffs' funds. He also opened accounts at Merrill Lynch and

Paine Webber in the name of others of the Benistar entities, including Benistar Ltd.(Merrill Lynch),

and BESTCO (Merrill Lynch and PaineWebber). The only two persons authorized to deal with and

write checks on the Merrill Lynch and PaineWebber accounts for Benistar Property were Daniel and

Molly. Benistar Property marketed its services as a qualified intermediary for tax-deferred §1031

property exchanges on the internet as part of a website with the URL "www.Benistar.com." The

website also described services of employee benefit plan and employee stock ownership plan

administration presumably provided by Benistar Ltd., BESTCO, and BASI. There was no separate

website for Benistar Property or indeed for any of the Benistar defendants. The website presents

Benistar Property as an integral part of the Benistar family of companies. In addition, Benistar Property

made individualized presentations, accompanied by promotional materials, that described §1031 tax-

6

## 3144

deferred exchanges, and the services Benistar Property could and would provide as a qualified
intermediary. All these Benistar materials– including the website– include a presentation to the effect
that a potential §1031 exchangor (i.e. a person like the plaintiffs) may be assured that his or her or its
money is safe with Benistar Property because Benistar Property is part of "Benistar, the largest 419
Trust Plan Administrator in the country, and we protect your assets." (See ex. 11, 35, 69A, 69B.)

Persons such as the plaintiffs who contracted with Benistar Property for its services as a
qualified intermediary were obligated to pay certain set fees. When Benistar Property received these
fees, it originally split them between itself and Benistar Ltd., but at some later point, Benistar Property
staff (in particular Linda Jokinen) received instructions to split the fees between Benistar Property and
BASI. The record includes a fair number of checks reflecting the transfer of funds that appear to
represent these client fees from Benistar Property to BASI.

In April of 2000, Daniel Carpenter submitted applications to the Travelers Casualty Company
for fiduciary liability insurance and a financial institution bond, respectively. (See ex. 424.) The
insurance application lists as the insured, "Benistar Group, Benistar Administrative Services, Benistar
Property Exchange, Benistar Ltd, TPG, and Benistar Insurance Group." It states that the "insured" has
been in business for 20 years and had annual sales or revenues of $1.6 million and assets of $50 million.
Daniel Carpenter signed this application as "chairman/Benistar Employer Services Trust
Corporation/Trustee." The fiduciary bond application lists as the applicants, "Benistar Administrative
Services, Inc., Benistar Ltd., Benistar Insurance Group, Inc., T.P.G., Benistar Group." It includes
property exchange services in its description of the applicants' business, even though Benistar Property
is not listed as an applicant. It states that "only chairman of board is permitted to sign checks." It is
signed by "Daniel Carpenter, Chairman", on behalf of "Benistar et als" as the insured.

7

## 3145

The plaintiffs requested documents from Benistar Ltd., BASI, BESTCO, and CFG that related to corporate structure, corporate minutes and other records, financial statements and other financial information including tax returns, and capitalization. The defendants produced absolutely nothing except the articles of organization and bylaws and the few other corporate documents described above. In the face of this non-production, I infer that none of the requested corporate documents exists.

This inference is supported by the testimony of the corporate designees of BASI, BESTCO and CFG. Donna Wayne, the corporate designee of BASI and a director as well as the assistant secretary of that company, testified that she knew nothing about the capitalization of the company, nothing about who the stockholders were, nothing about whether there were annual meetings or minutes of any such meetings, that she did not have any responsibilities as assistant secretary, that she was unable to identify any employees of the company, and that she knew nothing about the financial transfers of funds between BASI and Benistar Property reflected in the checks and account statements. She also had no knowledge that BASI's accountant had described BASI described in 1999 as an entity which operated by using the employees and assets of its parent, and that the parent, Benistar Ltd., imposed an administrative charge for these services of over $400,000 in 1999. Donald Trudeau, the president of BASI (but not its designated Rule 30(b)(6) representative), and corporate designee for BESTCO and CFG, testified that he knew of no employees of BESTCO or CFG other than Daniel Carpenter, who was an officer or director of both; could not describe the day to day business operations of BESTCO or CFG; had no knowledge of why $2,414,230 in funds belonging to the plaintiff Cahaly -- which were entrusted to Benistar Property -- were placed for a time in a BESTCO account, and had no knowledge of why $412,000 was transferred from Benistar Property's Merrill Lynch account to a CFG account. Trudeau also testified with respect to BASI, and stated that he knew the company had assets but could

## 3146

not tell the "monetary measure" (dep. p. 83), even though he served as BASI's president, had no

knowledge as to why there were intercompany transfers between BASI and Benistar Ltd., between

Benistar Property and BASI, and between BASI and CFG, or why funds were being transferred from

Benistar Ltd. to the BASI 401K plan; had no knowledge that BASI was charged $422,504 by its parent

Benistar Ltd. in the year ending January 31, 1999, or whether there were similar charges in subsequent

years; that while it is within the purview of his responsibilities as president of BASI to know who was

providing financial information to the company's accountant, he was not that person; and he had no

knowledge of where the operating bank account for BASI was held.

The plaintiffs did obtain, through subpoenas, bank statements from various bank accounts in the

name of Benistar Property, Benistar Ltd., BESTCO, BASI, and CFG. They also obtained account

statements related to the Merrill Lynch and PaineWebber accounts standing in the names of Benistar

Property, Benistar Ltd., and BESTCO. There are a significant number of large fund transfers between

and among Benistar Property, Benistar Ltd., BESTCO, BASI, and CFG.[10]

---

[10] For example, transfers of funds from Benistar Property to BESTCO – none of which
were explained by the Rule 30(b)(6) designee – included: from Benistar Property to BESTCO:
$150,000 on February 26, 1999; $500,000 on September 28, 1999; $500,000 on October 6, 1999;
$150,000 on December 30, 1999; $89,000 on February 4, 2000; and $607,062 on January 3,
2001, which was the date that Daniel Carpenter first notified any of the plaintiffs that all funds
entrusted by them to Benistar Property had been lost. In addition, on December 31, 2000, there
was a transfer of $290,000 from BESTCO to Benistar Property, and a transfer of $150,000 from
Benistar Property to BESTCO. It was also the case that the plaintiff Gail Cahaly's funds, totaling
$2,414,230, that had been entrusted with Benistar Property, were initially deposited on
November 9, 2000, in a BESTCO account, and then transferred to Benistar Property on
November 14, 2000. On July 27, 2000, CFG transferred $400,000 from a bank account to a
Benistar Property Merrill Lynch account intended to hold Benistar Property's client funds in
escrow, and on September 18, 2000, $412,000 of funds from the same Benistar Property Merrill
Lynch account were transferred to CFG -- in the context of Benistar Property's agreements with
each of its clients that no monies would be transferred by Benistar Property except at the client's
direction. On October 12, 2000, $500,000 from a "Benistar Employees" (an unexplained entity,
perhaps?) bank account was transferred to this same Benistar Property Merrill Lynch account

9

## 3147

With respect to U.S. Property, the corporation was organized on January 12, 2001, days after Benistar Property had closed its doors and notified at least some of the plaintiffs that their funds were lost. Like Benistar Property, U.S. Property is a Delaware corporation, and like Benistar Property, it has a Massachusetts office at 233 Needham Street in Newton. Its corporate purpose is to act as a qualified intermediary for tax deferred property exchanges, which of course was Benistar Property's business as well. Martin Paley is listed as the president, vice president, and the sole director of U.S. Property, and his wife Susan Paley is listed as the secretary; Martin Paley was listed as the president, treasurer, clerk and one of two directors of Benistar Property. Linda Jokinen, was employed by Benistar Property beginning in October 1998 – the month it was incorporated – until it "ceased to exist," in, she stated, February 2001, and was then employed by U.S. Property at the time of her deposition in March 2001. She worked in the same office for U.S. Property that she had for Benistar Property, and used the same computer, the same email and the same financial software system as she had for Benistar Property. Martin Paley himself did not testify, asserting his rights under the Fifth Amendment to the United States Constitution not to do so.

### Discussion

I. Benistar Ltd., BASI, BESTCO, and CFG.

---

intended to hold client funds in escrow. With respect to Benistar Ltd., there is a transfer of approximately $10,000 from a Benistar Property Merrill Lynch account to Benistar Ltd. on October 27, 2000, for which no explanation was given. In addition, there are a great number of transfers of significant funds between Benistar Ltd. and BASI –between 45 and 50 transfers of $10,000 or more (most of which are far in excess of $10,000) – during the time period from January 28, 1999, to August 21, 2001. Donald Trudeau, the president of BASI during this entire period, testified on deposition that he had no knowledge of any of these transfers. He also was unable to explain a $65,000 transfer from BASI to the law firm of Eckert Seamans, a law firm in Boston, for the benefit of Benistar, Ltd. (See ex. 415, Trudeau deposition, p. 115. See generally ex. 425, which summarizes these transfers; the underlying checks and account statements are also in evidence.)

10

## 3148

"The doctrine of corporate disregard is an equitable tool that authorizes courts, in rare situations, to ignore corporate formalities, where such disregard is necessary to provide a meaningful remedy for injuries and to avoid injustice." *Attorney General v. M.C.K., Inc.*, 432 Mass. 546, 555 (2000).[11] As the Supreme Judicial Court has observed:

'Where there is a common control of a group of separate corporations engaged in a single enterprise, failure (a) to make clear which corporation is taking action in a particular situation and the nature and extent of that action, *or* (b) to observe with care the formal barriers between the corporations with a proper segregation of their separate businesses . . . records, and finances, may warrant some disregard of the separate entities in rare particular situations in order to prevent gross inequity' (emphasis added).

*Id.* at 557, quoting *My Bread Baking Co. v. Cumberland Farms, Inc.*, 353 Mass. 614, 620 (1968).

Accord, *Evans v. Multicon Const. Corp.*, 30 Mass. App. Ct. 728, 732-733 (1991).[12]

The courts have identified twelve factors to consider in determining whether to set aside "corporate formalities" (*Attorney Gen. v. M.C.K., Inc., supra*, 432 Mass. at 555), and they are the

---

[11] The Phase III defendants contend that since they are all Delaware corporations, the law of Delaware on the issue of corporate disregard applies to this case, rather than the law of Massachusetts. I disagree. This case concerns Massachusetts plaintiffs transferring proceeds from the sale of primarily Massachusetts real estate to Benistar Property, which had an office in Newton, Massachusetts, the location from which its direct contacts with the plaintiffs emanated. See *Evans v. Multicon Const. Corp.*, 30 Mass. App. Ct. 728, 729, 737 n. 7 (1991)(applying Massachusetts law to question of piercing the corporate veil of an Ohio corporation because of the Massachusetts contacts in the case). See also *DeCastro v. Sanfill, Inc.*, 198 F.3d 282 (1st Cir. 1999)(applying Puerto Rican law to corporate veil question in case involving a Delaware corporation, because of the location of the pertinent transactions).

[12] "Occasion for doing so [i.e., piercing the corporate veil] arises when (1) there is active and pervasive control of related business entities by the same controlling persons *and* there is a fraudulent or injurious consequence by reason of the relationship among those business entities; or (2) there is 'a confused intermingling of activity of two or more corporations engaged in a common enterprise with substantial disregard of the separate nature of the corporate entities, or serious ambiguity about the manner and capacity in which the various corporations and their respective representatives are acting.'" *Evans v. Multicon Const. Corp., supra*, 30 Mass. App. Ct. at 731-732, quoting *My Bread Baking Co. v. Cumberland Farms, Inc.*, 353 Mass. 614, 619 (1968).

11

## 3149

following: (1) common ownership; (2) pervasive control; (3) confused intermingling of business activity assets, or management; (4) thin capitalization; (5) nonobservance of corporate formalities; (6) absence of corporate records; (7) no payment of dividends; (8) insolvency at the time of the litigated transaction; (9) siphoning away of corporate assets by the dominant shareholders; (10) nonfunctioning of officers and directors; (11) use of the corporation for transactions of the dominant shareholders; and (12) use of the corporation in promoting fraud. *Id.* at 555 n. 19. Accord, *Evans v. Multicon Constr. Corp., supra,* 30 Mass. App. Ct. at 733. See *Pepsi-Cola Metro. Bottling Co. v. Checkers, Inc.,* 754 F.2d 10, 14-16 (1st Cir. 1985).

A consideration of these factors in the present case follows:

(1) Common ownership    Daniel Carpenter owns Benistar Ltd., which in turn wholly owns BASI. In addition, I have inferred that Daniel, Daniel and Molly, or Benistar Ltd. also owns Benistar Property, Daniel or Daniel and Molly own BESTCO, and Daniel owns CFG. I have indicated in the findings the evidentiary bases for these inferences, and I add the following. As indicated, the corporate designee of BESTCO and CFG could answer virtually no questions about these two companies concerning their ownership, their directors or officers. He was at best totally unprepared – he stated he had spoken to counsel about the Rule 30(b)(6) deposition for approximately five minutes and had reviewed nothing. This is unacceptable. "Producing an unprepared witness is tantamount to a failure to appear at a deposition." *Calzaturficio S.C.A.R.P.A. s.p.a. v. Fabiano Shoe Co., Inc.,* 201 F.R.D. 33, 39 (D. Mass. 2001)(quotation omitted), and cases cited. In the circumstances, it is appropriate to permit an adverse inference to be drawn. Cf., e.g., *Graves v. R. M. Packer Co., Inc.,* 45 Mass. App. Ct. 760, 770 (1998). Moreover, where Daniel Carpenter, a witness who the evidence indicates had far greater knowledge about the designated subjects for each of the corporations, did not testify on each of their

12

## 3150

behalf but chose to assert his Fifth Amendment rights, I draw the inference that any answers that might

have been given to the questions posed concerning ownership and activities of these corporations would

have been prejudicial to Daniel Carpenter – that is, would have undermined any claim by him that he is

not the owner of one or both of these entities.  See *Lentz v. Metropolitan Property and Cas. Ins. Co.*,

437 Mass. 23, 26 (2002), and cases cited.

(2) <u>Pervasive control</u>.  The evidence shows that Daniel Carpenter appears to exercise pervasive

control over the activities of Benistar Ltd., BESTCO, and CFG – despite document requests and despite

Rule 30(b)(6) depositions, there was simply no evidence at all introduced to the contrary, and since

Carpenter is the owner of these entities, the only conclusion one can reasonably reach is that he was the

person in control.  Carpenter also exercised, with some participation from his wife Molly, complete

control over the financial all management of client funds for Benistar Property.

(3) <u>Confused intermingling of business activity assets or management</u>.  The check and bank

account information introduced by the plaintiffs reveals inter-company fund transfers between Benistar

Property and BASI, BESTCO, CFG and Benistar Ltd., , as well as between and among each of the last

four entities; the defendants offered for no explanation for any of them.  It is also true that all of these

entities had a common principal place or places of business at 507 Hopemeadow Street in Simsbury,

Connecticut or "Benistar Plaza" in Stamford, Connecticut, or both.  The Benistar website included all

of the companies, and presented the information in a way that showed them to be interconnected

members of the same business family, and potential clients of Benistar Property were specifically

assured that their money was sale with that company because it was part of Benistar.

With respect to management, the fiduciary insurance and fiduciary bond applications to

Travelers demonstrate that Daniel Carpenter presented and, one may infer, treated these individual

13

3151

companies – along with some additional ones that are not defendants here – as one group, with a

common set of 28 employees and assets of $50 million, and for all of which he, as "chairman," was the

only person with check-signing authority. In addition, insofar as Benistar Ltd., BESTCO and CFG are

concerned, in the face of the evidence about their common ownership and common officers and

directors, the defendants presented no real evidence to indicate what, if any, distinct corporate purposes

or functions the three companies performed.[13] I choose to draw an inference against Daniel with respect

to the scope of his control over and mingling of the management and operations of BESTCO and CFG.

BASI is in a slightly different place. The evidence revealed that Molly Carpenter was the driving force

of this entity on a day to day basis, and Molly was the person with pervasive control over the

company's finances, banking relationships, and all things related to them, although, as the Travelers

insurance applications and "corporate resolution" signed by Daniel, demonstrate, in some instances

Daniel asserted control.[14] Molly, while a party to this case, did not appear or testify, and I infer from

her absence that her testimony would have been detrimental to the defendants' position that BASI

should be considered a separately functioning corporation not subject to piercing. See *Custody of Two

Minors*, 396 Mass. 610, 616 (1986).

    (4) <u>Thin capitalization</u>. Despite requests for documents on the subject of capitalization, nothing

---

[13] As stated previously, the Rule 30(b)(6) designee Trudeau could not describe anything the companies did, but simply mentioned his knowledge that Daniel Carpenter was the person involved in them. While Donna Wayne offered some testimony concerning BESTCO's activities as a trustee for employee plans, she was not the corporate designee for BESTCO and the scope of her knowledge appeared both narrow and shallow.

[14] The depositions of Donna Wayne, BASI's assistant secretary and the head of administrative services, and Donald Trudeau, BASI's president, both of whom are also directors of the company, reveals in painful fashion that they are essentially in the dark about the management of the company, at least from any perspective tied to finances and financial control.

14

3152

was presented for any of the companies except the representation by Daniel Carpenter on the Travelers insurance and bond application that the companies, presumably as a group, had assets of approximately $50 million. (There was also testimony by Donald Trudeau that BASI was "capitalized" through lines of credit with vendors such as the Dell computer company.) In the circumstances, and again drawing adverse inferences from Daniel Carpenter's assertion of Fifth Amendment privilege and Molly Carpenter's non-appearance as a witness, I conclude that none of the defendant companies was adequately capitalized for the conduct of legitimate business.

(5) Non-observance of corporate formalities. Other than the fact that each of these corporations was indeed organized as a Delaware corporation and many of them appear to have (form) bylaws, there is simply no evidence that Benistar Property or any of the Phase III defendants except BASI observed any corporate formalities in the form of stockholder or director meetings, the keeping of corporate minutes and other corporate records. With respect to BASI, however, Trudeau testified to annual meetings and Donna Wayne testified to some sort of directors'meetings, and there are the two corporate documents described above (see note 9) that were signed by Daniel Carpenter. I do not credit Trudeau's testimony concerning annual meetings because he could remember absolutely no details of these supposed meetings, and I am not persuaded by the evidence that what Donna Wayne was attempting to describe were in fact corporate directors' meetings. I also do not find that the corporate resolution and other document signed by Daniel Carpenter are valid corporate documents.

(6) Absence of corporate records. This absence is obvious from the record of the case.

(7) No payment of dividends. There was no evidence that any of the Benistar entities had ever paid a dividend.

(8) Insolvency at the time of the litigated transaction. Insofar as Benistar Property is concerned,

15

## 3153

there is no dispute that as a result of Daniel Carpenter's and PaineWebber's activities in relation to the

Benistar Property brokerage accounts in PaineWebber, as of January 2001, Benistar Property was

insolvent.

(9) <u>Siphoning away of corporate assets by the dominant shareholders.</u>  The proof here is

indirect at best.  There were no tax returns or financial statements for Benistar Ltd., BASI, BESTCO, or

CFG that might have shown what the assets of these entites were, and whether any or all of them were

retaining earnings.  But it is not clear whether or to what extent Daniel and Molly have drained the

assets of these companies and taken them for their personal use.

(10) <u>Non-functioning of officers or directors other than the shareholders.</u>  The only officers or

directors of any of these corporations, Benistar Property included, who functioned as such, were Daniel

and Molly.  There is no contrary evidence.

(11) <u>Use of the corporation for transactions of the dominant shareholders.</u>  As the evidence in

Phase I of this case reflected – and as the jury implicitly found – Daniel Carpenter and Molly Carpenter

used Benistar Property as a source of funds to support Daniel's personal penchant for risky option

trading on the stock market.  As for the Phase III corporate defendants, the many inter-corporate fund

transfers through checks and wires signed or authorized by Daniel or Molly demonstrate that these

corporations have been used for the transaction – whatever they might be – of these two individuals.

Daniel's assertion of the Fifth Amendment privilege and Molly's non-appearance add inferential proof

to this factor.

(12) <u>Use of the corporation in promoting fraud.</u>  Again, the trial of Phase I showed that Benistar

Property was used to promote fraud in relation to the plaintiffs, who had entrusted their §1031 property

exchange funds to that company.  Insofar as Benistar Property funds beyond the fairly minimal fees

16

## 3154

paid by its clients were transferred between and among BESTCO, BASI, CFG and Benistar Ltd., the corporations promoted fraud on the plaintiffs as well.

This summary of the corporate disregard factors demonstrates that on the evidentiary record of this case, most of them apply: the first, second, third, fourth, fifth, sixth, seventh, tenth, and to some extent the twelfth apply to Benistar Property and the four Benistar-related Phase III defendants Benistar Ltd., BASI, BESTCO and CFG; the eighth, eleventh and twelfth apply to Benistar Property, the principal corporate defendant in the case. It is only the ninth factor that does not appear to be shown with any great clarity.

What gives one initial pause in this case is that the record certainly contains hints that some of the Phase III defendants appear to perform independent corporate services and functions unrelated to Benistar Property. However, (1) the blatant refusal of all the Phase III defendants to produce records supporting the legitimacy and independent existence of these corporations[15]; (2) their cynical response to the Rule 30(b)(6) depositions, shown by the choice of designees and the designees' total lack of preparation; and (3) the adverse inferences I draw from Daniel's assertion of his Fifth Amendment privilege to all questions and Molly's voluntary non-appearance as a witness, persuade me that on the record of this case, it is appropriate and necessary to disregard the corporate form with respect to Benistar Ltd., BASI, BESTCO and CFG in order "to provide a meaningful remedy and avoid injustice"[16], in this case. The plaintiffs have been awarded very substantial verdicts from the jury,

---

[15] It is true that there are a variety of corporate bank statements that the plaintiffs subpoenaed, but even they present some interesting questions. For example, a bank account in Benistar Ltd.'s name was later changed to be in BASI's name, with no explanation for the change being provided by the defendants.

[16] *Attorney General v. M.C.K., Inc.*, 432 Mass. 546, 555 (2000).

17

## 3155

commensurate with the very substantial losses they suffered at the hands of the principal defendants. Those defendants should not be permitted to escape responsibility through the misuse of the corporate form.

II. U.S. Property

The evidence shows that U.S. Property is clearly the successor to Benistar Property. Benistar Property no longer exists, that U.S. Property operates the same type of business out of the same Newton office that Benistar Property did, Martin Paley serves as president and principal representative of U.S. Property as he did for Benistar Property, and U.S. Property uses the same computers and software programs.

It is true that Benistar Ltd., Daniel Carpenter and Molly Carpenter appear to have no ownership interest in or operational association with U.S. Property, in contrast to the case with Benistar Property, but as far as the corporate business is concerned, the two are essentially the same. Moreover, no witness testified[17] and no other evidence was introduced to refute the inference that U.S. Property is simply a continuation of Benistar Property. I conclude that U.S. Property should be held liable for the judgments against Benistar Property on a theory of successor corporate liability. See *Cargill, Inc. v. Beaver Coal & Oil Co., Inc.*, 424 Mass. 356, 359 (1997).

### ORDER

---

[17]As mentioned previously, Martin Paley has asserted his Fifth Amendment privilege and declined to testify at any phase of this trial. In light of Paley's role as principal officer and director of U.S. Property, his refusal to testify gives rise to an inference against U.S. Property on the facts supporting a finding of successor liability. See *Lentz v Metropolitan Property and Cas. Ins.* Co., 437 Mass. 23, 26 (2002). Furthermore, it appears that Susan Paley – the secretary of U.S. Property and Martin Paley's wife – presumably could have testified on the subject of U.S. Property, but she was not called to do so. See *Custody of Two Minors*, 396 Mass. 610, 616 (1986). Cf. *McGinnis v Tetna Life & Cas. Co.*, 398 Mass. 37, 38-39 (1986). Indeed, no memorandum was filed by Paley or U.S. Property in connection with Phase III.

18

# 3156

For the foregoing reasons, it is **ordered** that final judgment is ultimately to enter in this case

against the defendants Benistar Ltd., Benistar Admin Services, Inc., Benistar Employer Services Trust

Corporation and Carpenter Financial Group, LLC, in the amount of the judgments entered against the

defendants Benistar Property Exchange Trust Co., Inc., Daniel Carpenter and Molly Carpenter; and that

final judgment is ultimately to enter in this case against the defendant U.S. Property Exchange in the

amount of the judgment entered against the defendant Benistar Property Exchange Trust Co., Inc.


_____
Margot Botsford
Justice of the Superior Court


Dated: September 23, 2003


19