**United States District Court**
**District of Massachusetts**

```
_____
                                  )
JOSEPH IANTOSCA, Individually     )
and as Trustee of the Faxon       )
Heights Apartments Realty Trust   )
and Fern Realty Trust, BELRIDGE   )    Civil Action No.
CORPORATION, GAIL A. CAHALY,      )    08-11785-NMG
JEFFREY M. JOHNSTON, BELLEMORE    )
ASSOCIATES, LLC, and              )
MASSACHUSETTS LUMBER COMPANY,     )
INC.                              )
          Plaintiffs,             )
                                  )
          v.                      )
                                  )
BENISTAR ADMIN SERVICES, INC.,    )
DANIEL CARPENTER, MOLLY           )
CARPENTER, BENISTAR PROPERTY      )
EXCHANGE TRUST COMPANY, INC.,     )
BENISTAR LTD., BENISTAR EMPLOYER  )
SERVICES TRUST CORPORATION,       )
CARPENTER FINANCIAL GROUP, LLC,   )
STEP PLAN SERVICE INC., BENISTAR  )
INSURANCE GROUP, INC., and        )
BENISTAR 419 PLAN SERVICES INC.   )
                                  )
          Defendants,             )
                                  )
TRAVELERS INSURANCE COMPANY and   )
CERTAIN UNDERWRITERS AT LLOYD'S,  )
LONDON                            )
          Reach and Apply         )
          Defendants.             )
_____ )
```

**MEMORANDUM & ORDER**

GORTON, J.

This case arises from the plaintiffs effort to recover on a Massachusetts state court judgment applicable to some of the defendants. A preliminary injunction has been entered barring

-1-

the reach and apply defendants from distributing to the defendants the proceeds of an unrelated settlement.  This memorandum and order addresses a number motions filed by the defendants which seek to have the case dismissed and/or the preliminary injunction vacated.

## I.  __Factual Background__

Plaintiffs claim that they are judgment creditors of several of the defendants in an aggregate of $20 million.  That judgment ("the Cahaly Judgment") is the product of an action in the Massachusetts Superior Court Department for Suffolk County, ("the Cahaly Litigation") in which it was held that several of the defendants improperly invested plaintiffs' escrowed funds.

Defendants Benistar Property Exchange Trust Company, Daniel Carpenter, Molly Carpenter, Benistar Admin Services, Inc. ("BASI"), Benistar Ltd, Benistar Employer Services Trust Corporation and Carpenter Financial Group, LLC (together "the Original Defendants") were parties to the Cahaly Litigation and are subject to the resulting judgment.  The remaining defendants, Benistar Insurance Group, Benistar 419 Plan Services, Inc. ("Benistar 419") and Step Plan Services Inc. ("Step") (together "the New Defendants"), were not parties to the Cahaly Litigation.

Plaintiffs allege that 1) the defendants have recently settled a Pennsylvania lawsuit brought by them ("the Pennsylvania Settlement") and 2) Travelers Insurance Company ("Travelers") and

Certain Underwriters of Lloyd's, London ("Lloyd's") (together "the Reach and Apply Defendants") are poised to deliver the proceeds of that settlement to the defendants.  Plaintiffs seek to reach and apply those proceeds in satisfaction of the Cahaly Judgment.

The defendants initially asserted that the entire Pennsylvania Settlement was payable to Step and that, because Step was not a party to the Cahaly litigation, the plaintiffs cannot enforce the Cahaly Judgment against it.  Defendants now maintain (without explanation) that the settlement is payable to Benistar 419.  In any event, Benistar 419 was also not a party to the Cahaly Judgment and, thus, the same argument applies.

The defendants also assert that the Cahaly Judgment precludes any recovery from the New Defendants because that judgment dismissed with prejudice any claims (including veil-piercing claims) against Jane Doe affiliates of the Benistar companies.  The pertinent portion of the Cahaly Judgement states:

> 8.   The Claims of All Plaintiffs Against the Defendants Jane Doe Affiliates and Subsidiaries of Benistar Defendants and Jane Doe Entities controlled by Daniel Carpenter:
>
> [It is ORDERED and ADJUDGED] [t]hat judgment enter against all the plaintiffs and in favor of the defendants Jane Doe Affiliates and Subsidiaries of Benistar Defendants and Jane Doe Entities controlled by Daniel Carpenter on all the plaintiffs' claims against these defendants, and that all such claims be dismissed.
>
> In granting the plaintiffs' motion for a preliminary

injunction, this Court noted that:

> It seems doubtful that the Cahaly Judgment was intended
> to foreclose prospectively plaintiffs' ability to
> enforce that judgment against an entity later
> determined to be an alter ego of the Original
> Defendants. . . . Nevertheless, this Court is reluctant
> to over-interpret state court judgments.  Therefore, as
> a condition of the continuation of the preliminary
> injunction to be enforced by this Memorandum and Order,
> this Court will require the plaintiffs to exercise due
> diligence to obtain a clarification of the Cahaly
> Judgment from the Suffolk Superior Court and
> periodically to update this Court on the progress of
> that effort.

In accordance with that order, plaintiffs have filed a motion for

clarification of the Cahaly Judgment in the Suffolk Superior

Court which is currently pending.

## II. **Procedural History**

Despite its relatively short life in federal court, this

case has already produced a long and convoluted procedural

history.  Plaintiffs initiated this action in Suffolk Superior

Court on October 23, 2008, and obtained an ex parte, temporary

restraining order enjoining the Reach and Apply Defendants from

conveying or disposing of any property of the defendants with

respect to the Pennsylvania Settlement.  Following the entry of

that order defendants removed the case to federal court and,

subsequently, filed motions to dismiss.

On October 28, 2008, the plaintiffs moved this Court to

extend the state court's temporary restraining order.  Following

a hearing, this Court entered its own temporary restraining order

and later, on November 21, 2008, a preliminary injunction barring the Reach and Apply Defendants from distributing any proceeds of the Pennsylvania Settlement to the defendants.  As conditions of the injunction the Court required plaintiffs 1) to post a security bond in the amount of $400,000 and 2) to seek clarification of the Cahaly Judgment from the Suffolk Superior Court.  The injunction was set to expire after six months but stated that it could be extended upon good cause shown by the plaintiffs.  The defendants timely appealed the injunction and that appeal remains pending before the First Circuit Court of Appeals.

On November 14, 2008, while the motion for a preliminary injunction was pending, plaintiffs filed an amended complaint. The amended complaint asserts reach and apply (Counts I and II), veil piercing (Count III) and fraudulent conveyance (Count IV) claims.   The defendants (in three separate, yet substantially identical, motions) moved to dismiss the amended complaint, asserting, inter alia, 1) lack of personal jurisdiction, 2) improper venue, 3) insufficient process, 4) insufficient service of process and 5) res judicata and collateral estoppel.  Several defendants also filed a "supplemental" motion to dismiss asserting that this Court lacks subject matter jurisdiction over plaintiffs' claims.

At about the same time there was substantial activity

-5-

involving the Reach and Apply Defendants and third-party
defendants.  On December 1, 2008, Lloyd's filed an answer along
with counterclaims against plaintiffs and cross-claims against
defendants seeking 1) to enforce the Pennsylvania Settlement if
necessary and 2) to interplead the settlement proceeds into this
Court for judicial distribution at law.  Lloyd's later filed a
third-party complaint making the same claims against Wayne Bursey
("Bursey"), a plaintiff in the Pennsylvania litigation who was
not named as a defendant in this case.

Bursey subsequently filed third-party counterclaims on
behalf of himself and the other defendants against 1) Lloyd's,
alleging unfair insurance claim settlement practices, abuse of
process and violations of M.G.L. c. 93A and the Connecticut
Unfair Trade Practices Act, and 2) the plaintiffs, alleging
malicious prosecution and violations of M.G.L. c. 93A.  In his
counterclaim, Bursey, a resident of Connecticut, alleges that
Lloyd's 1) took inconsistent positions during settlement
negotiations in Pennsylvania regarding the binding nature of the
proposed settlement agreement, 2) misrepresented certain facts
and policy provisions, 3) refused to offer a prompt and equitable
settlement, 4) took unreasonable negotiating positions, 5)
delayed the consummation of the settlement and procurement of
purported settlement proceeds and 6) improperly used interpleader
in this action despite the fact that settlement funds were in

dispute.

Predictably, the counterclaims, cross claims and third-party claims were followed by another round of motions to dismiss.  All of the defendants in this case filed a motion to dismiss Lloyd's cross-claims pursuant to Fed. R. Civ. P. 12(b)(6) and 12(b)(1) based upon the alleged unenforceability of the Pennsylvania Settlement.  On January 27, 2009, Lloyd's moved to dismiss Bursey's counterclaims and also moved to stay all parts of this case involving claims by or against it, including: 1) Count I of the amended complaint, 2) counterclaims and cross-claims brought by Lloyd's, 3) the third-party complaint filed by Lloyd's against Bursey and 4) Bursey's counterclaims against Lloyd's.  As grounds it asserted that a motion to enforce the Pennsylvania Settlement had been filed in the Pennsylvania state court and that resolution of that motion would have an impact on all claims relating to Lloyd's.  Travelers later filed a similar motion.

The defendants BASI, Benistar Insurance Group and Bursey subsequently filed a "supplemental" motion to dismiss or stay Lloyd's claims pursuant to the <u>Colorado River</u> abstention doctrine.  Defendants Step and Benistar 419 followed suit with a similar motion.  In February, 2009, all of the defendants also moved to stay the plaintiffs' claims pending resolution of the motion for clarification of the Cahaly Judgment which had been filed in Suffolk Superior Court.  The defendants also moved to

vacate the preliminary injunction.

This Court heard arguments on the motions to stay at a status conference held on February 25, 2009.  At that hearing the Court granted the Reach and Apply Defendants' motions to stay and stayed all matters with respect to them for a period of 90 days. The Court declined to rule on the defendants' motion to stay the entire case and instead invited further briefing on that issue. Upon concluding that a short stay of the entire case was warranted, the Court, on March 9, 2009, ordered that the entire case be stayed for 90 days running from February 25, 2009.

The preliminary injunction entered on November 21, 2008, was due to expire by its own terms during the course of the stay (on May 21, 2009).  The plaintiffs, apparently believing that a motion to continue the injunction would violate the stay, sought relief from the First Circuit, where the injunction remains on appeal.  The First Circuit denied the plaintiffs request to extend the injunction without prejudice to their seeking relief from this Court.

On May 27, 2009, five days after the preliminary injunction expired, plaintiffs moved to extend the injunction for another six months.  This Court allowed that motion over the defendants' opposition on June 2, 2009, and extended the injunction "until further order of this Court."  The Court ordered that the $400,000 bond remain posted but did not increase the amount of

the bond as requested by defendants.

The defendants have 1) moved for reconsideration of and 2) appealed this Court's order extending the preliminary injunction. On July 9, 2009, the defendants also filed a "report" on recent developments in which they proffer further argument in favor of vacating the preliminary injunction.

Although the 90-day stay entered by this Court expired by its own terms, little has changed with respect to the state court activity necessitating that stay. The Suffolk Superior Court has not yet ruled on the motion for clarification of the Cahaly Judgment. The Pennsylvania court has ruled that the Pennsylvania Settlement is valid and enforceable but the plaintiffs in the Pennsylvania litigation (and apparently some of the defendants in that case) have appealed that order. Nevertheless, this Court concludes that, to facilitate the orderly progression of this case, resolution of several of the pending motions is warranted.

III. **Defendants' Motions to Dismiss**

    A.   **Legal Standard**

In order to survive a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a complaint must simply contain factual allegations sufficient "to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). In considering the merits of a motion to dismiss, the court may look only to the facts alleged in the

pleadings, documents attached as exhibits or incorporated by
reference in the complaint and matters of which judicial notice
can be taken.  Nollet v. Justices of the Trial Court of Mass., 83
F. Supp. 2d 204, 208 (D. Mass. 2000) aff'd, 248 F.3d 1127 (1st
Cir. 2000).  Furthermore, the court must accept all factual
allegations in the complaint as true and draw all reasonable
inferences in the plaintiff's favor.  Langadinos v. American
Airlines, Inc., 199 F.3d 68, 69 (1st Cir. 2000).  If the facts in
the complaint are sufficient to state a cause of action, a motion
to dismiss the complaint must be denied.  See Nollet, 83 F. Supp.
2d at 208.

**B.   Analysis**

The defendants have filed a number of motions to dismiss
both the plaintiffs' original and amended complaint.  In those
motions they advance a variety of (often repetitive) arguments.
The Court will address each in turn.

**1.   Lack of Personal Jurisdiction**

Defendants assert that this Court lacks personal
jurisdiction over them because they have no contacts with the
Commonwealth of Massachusetts.  Plaintiffs respond that the
Original Defendants were found to be subject to jurisdiction in
Massachusetts during the Cahaly Litigation.  Although the
defendants assert that finding was erroneous, it was upheld by
the Massachusetts Appeals Court and the Massachusetts Supreme

Judicial Court and the U.S. Supreme Court denied certiorari. See, e.g., Cahaly v. Benistar Prop. Exch. Trust Co., Inc., 68 Mass. App. Ct. 668, 676 (2007) ("We . . . discern no error in the judge's thorough analysis of personal jurisdiction over the Benistar corporate defendants.") aff'd, 451 Mass. 343 (2008). Thus, the defendants are precluded from re-litigating that same issue before this Court.

The defendants nevertheless maintain that, while personal jurisdiction over the Original Defendants may have existed at the time of the Cahaly Litigation, the determination must be made anew in connection with this case pursuant to the so called "time of filing" rule. See Maysonet-Robles v. Cabrero, 323 F.3d 43, 49 (1st Cir. 2003) (noting that the so called "time of filing" rule provides that "federal jurisdiction attaches at the time when the action is commenced and cannot be ousted by later developments.") This case, however, arises directly from the Cahaly Judgment entered by the Massachusetts state court, and the Cahaly Litigation arose from conduct which that court found sufficient to subject the Original Defendants to jurisdiction in Massachusetts.  This Court, therefore, perceives no reason why that determination of personal jurisdiction should not apply equally in this action.

With respect to the New Defendants not subject to the Cahaly Judgment, the plaintiffs assert that they are subject to

jurisdiction under a corporate veil-piercing theory.  There is substantial authority holding that jurisdiction can be established through veil-piercing.  See United Elec. Radio & Mach. Workers v. 163 Pleasant St. Corp., 960 F.2d 1080, 1091 (1st Cir. 1992) ("[I]f the record contains facts that warrant disregarding . . . corporate independence, the district court was entitled to find . . . personal jurisdiction in Massachusetts on the basis of [the defendant's] relationship with its subsidiary."); Sigros v. Walt Disney World Co., 129 F. Supp. 2d 56, 64 (D. Mass. 2001) (finding jurisdiction over affiliated corporate entity appropriate where there was evidence of intermingling); Cabot Safety Intermediate Corp. v. Akron Safety Equip., Inc., 12 F. Supp. 2d 180, 181-82 (D. Mass. 1998).

As this Court noted in granting their motion for a preliminary injunction, the plaintiffs have presented substantial evidence that the defendant Step should be subject to the doctrine of corporate disregard.  Although the plaintiffs did not present evidence with respect to the other New Defendants (Benistar 419 and Benistar Insurance Group), that omission is understandable given the defendants' initial insistence that Step was the only beneficiary of the Pennsylvania Settlement. Moreover, in this case, the question of personal jurisdiction over the New Defendants overlaps with plaintiffs' substantive veil-piercing claim.  Consequently, the Court will permit

plaintiffs to take jurisdictional discovery and the
jurisdictional issue will be resolved along with plaintiffs'
veil-piercing claim at a later stage in the litigation.

### 2.   Improper Venue

The defendants assert that the case should be dismissed or
transferred to the District of Connecticut because venue is
improper under 28 U.S.C. § 1391(a).  As plaintiffs point out,
however, venue in a removal case (such as this one) is governed
by 28 U.S.C. § 1441(a) which provides, in pertinent part:

> Except as otherwise expressly provided by Act of
> Congress, any civil action brought in a State court of
> which the district courts of the United States have
> original jurisdiction, may be removed by the defendant
> or the defendants, <u>to the district court of the United
> States for the district and division embracing the
> place where such action is pending</u>.

28 U.S.C. § 1441(a) (emphasis added).  In response, the
defendants nevertheless maintain their challenge, noting that
removal to federal court does not alter their right to challenge
the propriety of the state court venue where the case was
initially brought.  See <u>Lambert</u> v. <u>Kysar</u>, 983 F.2d 1110, 113 n.2
(1st Cir. 1993).  Defendants point to the Massachusetts venue
statute, which provides, in pertinent part:

> A transitory action shall, . . . if any one of the
> parties thereto lives in the commonwealth, be brought
> in the county where one of them lives or has his usual
> place of business . . . .

M.G.L. c. 223, § 1.

Here, it is beyond dispute that the case was properly

-13-

brought in Suffolk Superior Court because one of the plaintiffs, Jeffrey Johnston, resides in Boston, Massachusetts (i.e., within Suffolk County).  The case cited by the defendants does not support the proposition that an allegation of residence is insufficient to establish venue.  See Bolton v. Krantz, 54 Mass. App. Ct. 193, 199 (2002) (holding that "[a] prison inmate 'lives' both in the county where he is incarcerated . . . and in the county where he maintains his domicile, if different, for purposes of venue").

Accordingly, this Court finds that the defendants' arguments with respect to venue are without merit.

### 3.   Res Judicata and Collateral Estoppel

Defendants assert that the plaintiffs' claims against the New Defendants are barred by the doctrine of res judicata based on the Cahaly Judgment.  As noted, that judgment provides, in pertinent part:

> [t]hat judgment enter against all the plaintiffs and in favor of the defendants Jane Doe Affiliates and Subsidiaries of Benistar Defendants and Jane Doe Entities controlled by Daniel Carpenter on all the plaintiffs' claims against these defendants, and that all such claims be dismissed.

Because plaintiffs pursued claims of veil-piercing in the Cahaly Litigation, defendants assert that they are barred from pursuing those claims against the New Defendants now.

As this Court noted in allowing plaintiffs' motion for a preliminary injunction, it does not construe the ambiguous

-14-

language of the Cahaly Judgment to foreclose prospectively the
plaintiffs' ability to pierce the corporate veil of entities
later determined to be alter egos of the Original Defendants.  In
any event, this Court has expressed its confidence that the
Suffolk Superior Court will clarify the meaning of the Cahaly
Judgment and further understands that a motion to that effect
remains pending.  Therefore, the defendants' motions to dismiss
plaintiffs' veil-piercing claim on <u>res judicata</u> grounds will be
denied without prejudice to the defendants moving for
reconsideration in the event that the Suffolk Superior Court
issues a ruling inconsistent with this Court's analysis.

### 4.   Insufficient Process

The defendants seek dismissal on the ground that the
plaintiffs' amended complaint failed to name all defendants in
the case caption (using "et al." instead) in violation of Fed. R.
Civ. P. 10(a).  <u>See</u> Fed. R. Civ. P. 10(a) ("The title of the
complaint must name all the parties").  Although the use of "et
al." in the plaintiffs' first amended complaint constitutes a
technical violation of the Rule, this Court concludes that
dismissal is not warranted on that ground.  All of the defendants
had notice of the claims against them and thus suffered no
prejudice from the amended complaint's technical defect.  <u>See</u>
<u>Spring Water Dairy, Inc.</u> v. <u>Fed. Intermediate Credit Bank of St.</u>
<u>Paul</u>, 625 F. Supp. 713, 721 (D. Minn. 1986) (failure to list

defendant in caption of complaint did not warrant dismissal where body of complaint made explicit references to defendant).  The body of the amended complaint clearly and explicitly identifies each defendant within the first three pages.  See Saykin v. Donald W. Wyatt Det. Ctr., Civ. No. 07-182, 2008 WL 2128059, at *2 (D.R.I. May 20, 2008) (noting that "many courts consider the body of the complaint to discern the parties" but dismissing defendants where complaint was "utterly devoid" of any reference to them (citation omitted)).  Dismissing this case on such grounds would elevate form over substance.

### 5.   Insufficient Service of Process

The defendants also argue that the plaintiffs' claims should be dismissed because they failed to serve process properly on two of the defendants (BASI and Molly Carpenter).  This argument is without merit.  The defendants filed their motion to dismiss prior to the expiration of the 120-day period within which plaintiffs were entitled to serve their complaint.  See Fed. R. Civ. P. 4(m).  Plaintiffs have since properly served process on all defendants and dismissal is not warranted on this ground.

### 6.   Lack of Subject Matter Jurisdiction

The defendants argue that this Court lacks subject matter jurisdiction over plaintiffs' claims because Massachusetts law prevents the execution of a judgment while an appeal is pending. See M.G.L. c. 231, § 115 ("No execution shall issue during the

pendency of an appeal.  In the event that execution has issued
. . . all further proceedings thereon shall be stayed."); M.G.L.
c. 235, § 16 ("No execution shall issue upon a judgment until the
exhaustion of all possible appellate review thereof . . . ."); 
Mass. R. Civ. P. 62(d) ("the taking of an appeal from a judgment
shall stay execution upon the judgment during the pendency of the
appeal").  Defendants assert that plaintiffs' claims should be
dismissed because, at the time plaintiffs initiated this case, a
petition for writ of certiorari with respect to the Cahaly
Judgment was pending before the U.S. Supreme Court.

     Even were this Court to consider a petition for a writ of
certiorari the equivalent of a pending appeal, the defendants'
argument is unavailing for a number of reasons.  First, the
applicable authorities merely require the <u>stay</u> of execution of a
judgment while an appeal is pending (as opposed to the outright
dismissal defendants seek).  Second, there is currently no appeal
of the Cahaly Judgment pending.  The Massachusetts Supreme
Judicial Court upheld that judgment and the defendants' petition
for writ of certiorari was recently denied.  <u>Benistar Ltd.</u> v.
<u>Cahaly</u>, 129 S. Ct. 637 (Dec. 1, 2008).  The defendants'
subsequent petition for rehearing was also denied.  <u>Benistar</u> v.
<u>Cahaly</u>, 126 S. Ct. 1056 (Jan. 26, 2009).  Thus, there is clearly
no appeal of the Cahaly Judgment pending and dismissal (or even a
stay) is not warranted on that ground.

The defendants' argument that plaintiffs somehow lack Article III standing to bring this case is similarly without merit.  Plaintiffs allege an injury in fact by asserting that the distribution of the Pennsylvania Settlement will inhibit their ability to recover on a judgment.

### 7.    Anti-Injunction Act as a Bar to Plaintiffs' Claims

Defendants assert that plaintiffs' claims are barred by the Anti-Injunction Act.  That act states:

> A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.

28 U.S.C. § 2283. Defendants assert that this Court's consideration of plaintiffs' claims would violate that act by unduly interfering with the ongoing Pennsylvania litigation. That argument is unavailing.  The fact that this Court's consideration of plaintiffs' claims may effect the Pennsylvania litigation (or, more accurately, the consequences of the settlement of that litigation) does not mean that this Court is impermissibly interfering with state court proceedings.

### 8.    The Cahaly Judgment Is Void

The defendants also argue that this case should be dismissed on the ground that the underlying Cahaly Judgment is void because the Massachusetts state courts lacked personal jurisdiction over the defendants.  They even go so far as to suggest that the

proceedings that culminated in that judgment were akin to the
Salem witch trials.  In essence, the defendants ask this Court to
do what the Supreme Court explicitly forbade in <u>Rooker</u> v.
<u>Fidelity Trust Co.</u>  <u>See</u> 263 U.S. 413, 415 (1923) (holding that
federal district courts lack authority to declare state court
judgments null and void); <u>see</u> <u>also</u> <u>D.C. Court of Appeals</u> v.
<u>Feldman</u>, 460 U.S. 462, 482 (1983) (same); <u>Schmitt</u> v. <u>Schmitt</u>, 324
F.3d 484, 487 (7th Cir. 2007) (<u>Rooker</u>-<u>Feldman</u> bars consideration
of whether state court lacked personal jurisdiction).  Because
this Court lacks the authority to declare state court judgments
void for lack of jurisdiction, the defendants' motion to dismiss
will not be allowed on that ground.

### 9.   The Cahaly Judgment has been Satisfied with Respect to Molly Carpenter

The defendant Molly Carpenter seeks dismissal of the claims
against her on the ground that she has satisfied her portion of
the Cahaly Judgment.  The defendant offers no evidence to support
that contention.  The fact that plaintiffs have recovered a
portion of the judgment from some of the Original Defendants
(approximately $15 million) does not demonstrate that Molly
Carpenter has fully satisfied the judgment against her.

## IV.  <u>The Preliminary Injunction</u>

In addition to moving to dismiss this case, the defendants
have repeatedly moved to dissolve the preliminary injunction.  In
addition to appealing that injunction to the First Circuit (an

appeal which remains pending), they have 1) filed a motion to vacate the preliminary injunction 2) opposed this Court's extension of the injunction, 3) moved for reconsideration of the extension and 4) appealed the extension.  Most recently, they have filed a "report" on recent developments and made further arguments against continuing the injunction.  As should be evident from the order extending the injunction, this Court finds none of the defendants' arguments persuasive.

**A.   Defendants' Motion to Vacate the Preliminary Injunction**

The defendants request that this Court vacate the preliminary injunction on the grounds that 1) the Cahaly Judgment precludes plaintiffs' claims against the New Defendants and is not likely to be amended by the Suffolk Superior Court, 2) the plaintiffs failed to comply with a condition of the injunction by not updating this Court on the status of its efforts to obtain clarification of the Cahaly Judgment and 3) plaintiffs' cannot seize the assets of ERISA plans to satisfy the Cahaly Judgment and, thus, are unlikely to succeed on the merits of their claims.

The defendants' first argument has already been discussed above in connection with this Court's consideration of the their motions to dismiss and the injunction will not be vacated on that ground.  Moreover, while the Court does not condone the plaintiffs' failure to file a report as required by the injunction, that oversight does not warrant the injunction's

dissolution.  This Court was updated on the status of the motion for clarification at a status conference in February, 2009, and, furthermore, in extending the preliminary injunction, it has required plaintiffs to report periodically on the status of that motion.  The Court fully expects plaintiffs to comply with that requirement going forward.

The defendants' third argument in favor of dissolving the injunction is also unpersuasive.  Defendants argue that the settlement proceeds, which are purportedly payable to defendants Step or Benistar 419, belong to those ERISA plans and as such cannot be reached by a creditor.  Determination of the rightful owner of the Pennsylvania Settlement, however, is the very object of plaintiffs' claims.  In addition to their veil-piercing claim they assert a claim for fraudulent conveyance on the grounds that one or more of the Original Defendants is entitled to the proceeds of the Pennsylvania Settlement and that the New Defendants have been named payees in an effort to keep the money from judgment creditors.  Thus, it is far from clear that the proceeds of the Pennsylvania Settlement are assets of ERISA plans.

Moreover, the defendants' own conduct in this case belies any assertion that the proceeds of the Pennsylvania Settlement are the unalienable and unassignable assets of ERISA plans.  After vigorously arguing at the preliminary injunction stage that

-21-

the entire Pennsylvania Settlement was payable to the defendant Step, the defendants abruptly altered their argument in their motion to vacate by asserting, in a footnote and without explanation, that: "The intended payee of the settlement is no longer STEP, but Benistar 419 Plan."  That the defendants apparently feel free to reassign those assets as they see fit undermines their assertion that the proceeds of the Pennsylvania Settlement are the unalienable assets of ERISA plans.

Finally, as this Court noted at the February status conference, the injunction is currently on appeal to the First Circuit and this Court is disinclined to disrupt its consideration of the matter.  For all of the foregoing reasons the defendants' motion to vacate will be denied.

### B.   Defendants' Motion for Reconsideration

On June 2, 2009, this Court extended the preliminary injunction over the defendants' opposition and notwithstanding the fact that the original injunction had expired by its own terms.  The defendants have moved for reconsideration of that order.  In their motion, they take issue with this Court's decision 1) to enter a new injunction of indefinite duration and 2) not to increase the amount of plaintiffs' bond.  They also assert that this Court was without authority to issue the injunction under Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, 527 U.S. 308 (1999).

This Court extended the injunction indefinitely in an effort to avoid the relitigation of its merits every few months.  If new and persuasive evidence casts doubt on the continued need for an injunction, the defendants are not foreclosed from calling it to the Court's attention.  Moreover, plaintiffs' $400,000 bond provides adequate protection to the defendants if it is later determined that the injunction was entered improvidently.  Accordingly, this Court will not require plaintiffs to increase the amount of that bond.

The defendants' argument based on Grupo Mexicano is also unavailing.[1]  In Grupo Mexicano, the Supreme Court held that a preliminary injunction freezing assets was inappropriate in an action for money damages where the plaintiff claimed no lien or equitable interest in the property in question.  Id. at 333.  The case at hand is distinguishable, however, because, notwithstanding defendants' assertion that "[t]his is not a fraudulent transfer case," plaintiffs do make such a claim.  The Court in Grupo Mexicano explicitly distinguished fraudulent conveyance claims.  See id. at 324 n.7 (noting that the outcome might be different in states that have adopted the Uniform Fraudulent Transfers Act but stating "[b]ecause this case does

---

[1] The Court notes that, despite vigorously opposing the issuance of an injunction, moving to vacate that injunction and opposing its extension, the defendants raise this argument for the first time in their motion for reconsideration.

not involve a claim of fraudulent conveyance, we express no opinion on the point").

Although, in granting the preliminary injunction, this Court emphasized plaintiffs' likelihood of success on their veil-piercing claim against Step, their claim of fraudulent conveyance is equally compelling.  The fact that the defendants have apparently changed the purported payee of the Pennsylvania Settlement (from Step to Benistar 419) suggests that they are structuring the settlement so as to avoid judgment creditors.

Moreover, the plaintiffs 1) <u>have</u> obtained a judgment against some of the defendants and 2) assert that the proceeds of the Pennsylvania Settlement are the property of those defendants. <u>Grupo Mexicano</u> is thus further distinguishable on those grounds. <u>See</u> <u>id.</u> at 321 (stating the "well-established general rule that a judgment establishing the debt was necessary before a court of equity would interfere with the debtor's use of his property").

### C.   Defendants' Report on Recent Developments

A few weeks ago the defendants filed a "report" on recent developments which they assert further support dissolving the preliminary injunction.  Specifically, the defendants note that the plaintiffs recently obtained a special jury verdict against Merrill Lynch for aiding and abetting the defendant Benistar Property Exchange Trust Company, Inc. in its breach of fiduciary duties to the plaintiffs.  They argue that, based on that

verdict, plaintiffs will be able to obtain a judgment against Merrill Lynch for tens of millions of dollars and that, therefore, plaintiffs can no longer show that they will be irreparably harmed without the protection of a preliminary injunction.

It is unclear how a prospective judgment against Merrill Lynch has any bearing on the need for a preliminary injunction in this case.  Consequently, the Court will not vacate the preliminary injunction simply because of the plaintiffs' success in a related case.

### ORDER

In accordance with the foregoing:

1)      The defendants' motions to dismiss (Docket Nos. 7, 10, 65, 66, 67 and 79) are **DENIED** without prejudice to the defendants Step, Benistar 419 and Benistar Insurance Group moving for reconsideration in the event that the Suffolk Superior Court issues a ruling inconsistent with this Court's interpretation of the Cahaly Judgment;

2)      The defendants' motion to vacate the preliminary injunction (Docket No. 128) is **DENIED**; and

3)      The defendants' motion for reconsideration (Docket No. 146) is **DENIED.**

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated: July 30, 2009