United States District Court
District of Massachusetts

JOSEPH IANTOSCA, Individually and as Trustee of the Faxon Heights Apartments Realty Trust and Fern Realty Trust, BELRIDGE CORPORATION, GAIL A. CAHALY, JEFFREY M. JOHNSTON, BELLEMORE ASSOCIATES, LLC, and MASSACHUSETTS LUMBER COMPANY, INC.,
Plaintiffs,

v.

BENISTAR ADMIN SERVICES, INC., DANIEL CARPENTER, MOLLY CARPENTER, BENISTAR PROPERTY EXCHANGE TRUST COMPANY, INC., BENISTAR LTD., BENISTAR EMPLOYER SERVICES TRUST CORPORATION, CARPENTER FINANCIAL GROUP, LLC, STEP PLAN SERVICE INC., BENISTAR INSURANCE GROUP, INC., and BENISTAR 419 PLAN SERVICES INC.,
Defendants,

TRAVELERS INSURANCE COMPANY and CERTAIN UNDERWRITERS AT LLOYD'S, LONDON,
Reach and Apply Defendants.

CERTAIN UNDERWRITERS AT LLOYD'S, LONDON and All Participating Insurers and Syndicates,
Third-Party Plaintiff,

v.

WAYNE H. BURSEY,
Third-Party Defendant.

Civil Action No. 08-11785-NMG

**MEMORANDUM & RESTATED ORDER**

**GORTON, J.**

This case arises from the plaintiffs' effort to recover on a Massachusetts state court judgment against some of the defendants. This Court recently convened a status conference at which oral rulings were issued on all of the motions then pending. The Court now explains and reaffirms its rulings with respect to four motions to dismiss.

## I. Factual Background

Plaintiffs claim that they are judgment creditors of several of the defendants in an aggregate of $20 million, only a portion of which has been paid. That judgment ("the Cahaly Judgment") is the product of an action in the Massachusetts Superior Court Department for Suffolk County ("the Cahaly Litigation") in which it was held that several of the defendants improperly invested plaintiffs' escrowed funds.

Defendants Benistar Property Exchange Trust Company, Daniel Carpenter ("Carpenter"), Molly Carpenter, Benistar Admin Services, Inc. ("BASI"), Benistar Ltd., Benistar Employer Services Trust Corporation and Carpenter Financial Group, LLC (together "the Original Defendants") were parties to the Cahaly Litigation and are subject to the resulting judgment. Not all of those parties were originally named in the Cahaly Litigation but, in September, 2003, the state court pierced the corporate veil

and extended liability to additional entities owned by Carpenter and his wife. The remaining defendants in this case, Benistar Insurance Group, Benistar 419 Plan Services, Inc. ("Benistar 419") and Step Plan Services Inc. ("Step") (together "the New Defendants"), were not parties to the Cahaly Litigation.

Plaintiffs allege that 1) the defendants have recently settled a Pennsylvania lawsuit brought by them ("the Pennsylvania Settlement") and 2) Travelers Insurance Company ("Travelers") and Certain Underwriters of Lloyd's, London ("Certain Underwriters") (together "the Reach and Apply Defendants") are poised to deliver the proceeds of that settlement to the defendants.[1] Plaintiffs seek to reach and apply those proceeds in satisfaction of the Cahaly Judgment.

The Pennsylvania Settlement arises out of a litigation brought against John Koresko ("Koresko") and several entities he owned by the New Defendants, Wayne Bursey ("Bursey") and BASI (which was also a party to the Cahaly Litigation). The purported settlement was for approximately $4.5 million. Although not all of the same entities are both judgment debtors in the Cahaly Litigation and plaintiffs in the Pennsylvania litigation,

---

[1] In subsequent filings, ACE Capital Ltd. and Columbia Casualty Company state that they were improperly listed as "Underwriters at Lloyd's, London" but are appearing as "Certain Underwriters". Despite how they are described in the parties' pleadings, therefore, they will be referred to as Certain Underwriters here.

plaintiffs in this case allege that the defendants are abusing the corporate form in order to avoid the Cahaly Judgment.

The defendants initially asserted that the entire Pennsylvania Settlement was payable to Step and that, because Step was not a party to the Cahaly Litigation, the plaintiffs cannot enforce the Cahaly Judgment against it. Defendants now maintain (without explanation) that the settlement is payable to Benistar 419. In any event, Benistar 419 was also not a party to the Cahaly Judgment and thus the same argument applies.

The defendants also assert that the Cahaly Judgment precludes any recovery from the New Defendants because that judgment dismissed with prejudice any claims (including veil-piercing claims) against Jane Doe affiliates of the Benistar companies and the New Defendants qualify as "Jane Does". In granting the plaintiffs' motion for a preliminary injunction in November, 2008, however, this Court found that:

> It seems doubtful that the Cahaly Judgment was intended to foreclose prospectively plaintiffs' ability to enforce that judgment against an entity later determined to be an alter ego of the Original Defendants.... Nevertheless, this Court is reluctant to over-interpret state court judgments.

As a condition of the preliminary injunction, therefore, the Court required plaintiffs to seek clarification of the Cahaly Judgment from the Suffolk Superior Court. Plaintiffs did so and this Court has recently been informed that their motion for clarification was decided in May, 2010. It is reported, without

dispute, that Massachusetts Superior Court Judge Stephen Neel held that the interpretations and analyses of this Court and of the First Circuit Court of Appeals were consistent with his understanding of the Cahaly Judgment and that there was no persuasive reason to conclude otherwise. The issuance of a second amended judgment is apparently forthcoming.

## II. Procedural History

Despite having remained relatively dormant for the past year, this case has developed a long and convoluted procedural history. Plaintiffs initiated this action in Suffolk Superior Court in October, 2008, and obtained an ex parte, temporary restraining order enjoining the Reach and Apply Defendants from conveying or disposing of any property of the defendants with respect to the Pennsylvania Settlement.

The case was then removed to this Court and the defendants filed motions to dismiss. Shortly thereafter, the plaintiffs moved to extend the state court's temporary restraining order. Following a hearing, this Court entered its own temporary restraining order and, on November 21, 2008, a preliminary injunction barring the Reach and Apply Defendants from distributing any proceeds of the Pennsylvania Settlement to the defendants. The injunction was imposed for a six-month period subject to extension for good cause shown. Step and Benistar 419 timely appealed the imposition of the injunction.

On November 14, 2008, while the motion for a preliminary injunction was pending, plaintiffs filed an amended complaint. The defendants (in three separate, yet substantially identical, motions) then moved to dismiss that amended complaint. Several defendants also filed a "supplemental" motion to dismiss.

At about the same time there was substantial activity involving the Reach and Apply Defendants and third-party defendant Bursey. On December 1, 2008, Certain Underwriters filed an answer along with counterclaims against plaintiffs and cross claims against defendants seeking 1) to enforce the Pennsylvania Settlement if necessary and 2) to interplead the settlement proceeds into this Court for judicial distribution. Certain Underwriters later filed a third-party complaint making the same claims against Bursey, who was the only plaintiff in the Pennsylvania litigation not at that time named as a defendant in this case. They apparently did so in order to bring into the case all parties with any interest in the disposition of the Pennsylvania Settlement.

Bursey subsequently filed third-party counterclaims on behalf of himself and the other defendants against 1) Certain Underwriters, alleging unfair insurance claim settlement practices, abuse of process and violations of the Massachusetts Consumer Protection Act (M.G.L. c. 93A) and the Connecticut Unfair Trade Practices Act ("CUPTA"), Conn. Gen. Stat. § 42-110a,

et seq., and 2) the plaintiffs, alleging malicious prosecution and violations of M.G.L. c. 93A.

Predictably, the counterclaims, cross claims and third-party claims were followed by another round of motions to dismiss. All of the defendants in this case filed a motion to dismiss Certain Underwriters' cross claims based upon the alleged unenforceability of the Pennsylvania Settlement.[2] Thereafter, Certain Underwriters moved to dismiss Bursey's third-party counterclaims and also moved to stay this case with respect to all claims by or against them. As grounds they asserted that a motion to enforce the Pennsylvania Settlement had been filed in January, 2009 in the Pennsylvania state court and that resolution of that motion would have an impact on all claims relating to Certain Underwriters. The plaintiffs in that case apparently contested the reported settlement and the defendants (the insureds of the Reach and Apply Defendants) moved to enforce it.

The defendants BASI, Benistar Insurance Group and Bursey subsequently filed a "supplemental" motion to dismiss or stay Certain Underwriters' cross claims pursuant to the Colorado River abstention doctrine. Defendants Step and Benistar 419 followed suit with a similar motion. In February, 2009, all of the defendants also moved to stay the plaintiffs' claims pending

---

[2] This motion was inadvertently allowed in January, 2009. See Docket No. 92.

resolution of the motion for clarification of the Cahaly Judgment which had been filed in Suffolk Superior Court. The defendants also moved to vacate the preliminary injunction.

This Court heard arguments on the motions to stay at a status conference held on February 25, 2009. At that hearing the Court granted the Reach and Apply Defendants' motions to stay and stayed all matters with respect to them for a period of 90 days. After further briefing, the Court concluded that a short stay of the entire case was warranted and, on March 9, 2009, ordered a stay for 90 days to run from February 25, 2009.

The preliminary injunction entered on November 21, 2008 was due to expire by its terms during the course of the stay (on May 21, 2009). After initially seeking and being denied relief in the First Circuit Court of Appeals, plaintiffs moved to extend the injunction in this Court for another six months. The Court allowed that motion over the defendants' opposition and extended the injunction "until further order of this Court". The defendants then moved for reconsideration of its motion and appealed the issuance of an extension to the circuit court.

On July 30, 2009, this Court issued an Memorandum and Order ("M&O") denying six motions to dismiss by the defendants as well as defendants' motions to vacate the preliminary injunction and to reconsider extending the injunction. The motions to dismiss were denied without prejudice

to the defendants Step, Benistar 419 and Benistar Insurance Group moving for reconsideration in the event that the Suffolk Superior Court issues a ruling inconsistent with this Court's interpretation of the Cahaly Judgment.

With respect to the pending state court matters, the Court noted that, although the 90-day stay had expired, "little ha[d] changed with respect to the ... activity necessitating that stay". The Court nonetheless concluded that the resolution of several pending motions was warranted to facilitate the orderly progression of the case. The Court did not, however, rule on all motions pending at that time and motions for miscellaneous relief and to dismiss Certain Underwriters' cross claims and Bursey's third-party counterclaims remained outstanding.

Defendants timely appealed the July, 2009 M&O and it was consolidated with the appeal already pending in the First Circuit Court of Appeals. This case then entered something of a holding pattern while the Court awaited word on the pending state court matters and the pending appeal. On May 3, 2010, the First Circuit issued an opinion affirming this Court's rulings in all respects.

On August 5, 2010, this Court held a status conference to address several pending motions, to hear a report on the matters pending in Massachusetts and Pennsylvania courts and to discuss a schedule for going forward. With respect to the Cahaly Litigation, plaintiffs submitted a "final" status report the day

before the hearing and attached Superior Court Judge Neel's decision on their motion for clarification. With respect to the motion to enforce the settlement in Pennsylvania, the parties informed the Court that the trial court had found the settlement valid and enforceable and that its decision has been appealed to the Pennsylvania Superior Court where it was fully briefed and argued and has been under advisement since about January, 2010. This Court issued its oral ruling on all fifteen motions then pending and discussed dates for a scheduling order to follow. In issuing its rulings, the Court notified the parties that it would amplify those rulings in a Memorandum to follow which it does here.

## III. Analysis

### A. Motion to Dismiss Standard

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). In considering the merits of a motion to dismiss, the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. Langadinos v. American Airlines, Inc., 199 F.3d 68, 69 (1st Cir. 2000). If the facts in the complaint are sufficient to state a cause of action, a motion to dismiss the complaint must be denied. Nollet v. Justices of

the Trial Court of Mass., 83 F. Supp. 2d 204, 208 (D. Mass. 2000) aff'd, 248 F.3d 1127 (1st Cir. 2000).

Although a court must accept as true all of the factual allegations contained in a complaint, that doctrine is not applicable to legal conclusions. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). Threadbare recitals of the legal elements, supported by mere conclusory statements, do not suffice to state a cause of action. Id.

**B. Application**

**1. Defendants' motion to dismiss Certain Underwriters' cross claims**

Certain Underwriters' cross claims seek 1) to enforce the Pennsylvania Settlement if necessary and 2) to interplead the settlement funds into this Court for distribution to judicially-determined payee(s). Defendants BASI, Benistar Insurance Group, Benistar 419 and Step ("the moving defendants") move to dismiss those cross claims. First, they argue that Count I fails to state a claim upon which relief can be granted because the settlement agreement that it seeks to enforce contains ambiguities about the amount of the settlement and is not reduced to a finalized, detailed writing.

Similarly, the moving defendants contend that Count II must be dismissed for lack of subject matter jurisdiction because, without an enforceable settlement agreement, there is no basis for subject matter jurisdiction over the interpleader action.

With respect to enforceability, the moving defendants argue that this Court's November, 2008 preliminary injunction 1) was a supervening event which frustrated the purpose of the settlement (because the settlement was entirely dependent upon the payment of funds to Step) and 2) eliminated Certain Underwriters' consideration for the agreement (because Certain Underwriters agreed to pay Step and are now enjoined from doing so).

Finally, the moving defendants contend that, even if this Court determines that it has subject matter jurisdiction, it should dismiss the cross claims under the Colorado River abstention doctrine. That doctrine applies when a parallel proceeding is pending in state court and the moving defendants argue that, because enforceability of the settlement should be determined by the Pennsylvania state court, this Court should abstain and dismiss the cross claims.

Certain Underwriters respond first by clarifying that the basis for their two claims is simply to preserve their rights as insurers to enforce the settlement if necessary and to interplead the settlement amount. They go on to state that

> common sense and comity support having that Pennsylvania state court decide the enforcement issue in the first instance, but if this Court decides to proceed before that court acts, Certain Underwriters' claims are necessary to that process. The Benistar Defendants' assertion that the same claims and issues should be dismissed is nonsensical.

Certain Underwriters then address the moving defendants'

remaining arguments for dismissal. After correcting several alleged misrepresentations in the motion to dismiss and opposing arguments advanced summarily in footnotes, they aver that arguments against the enforceability of the settlement (and thus against this Court's subject matter jurisdiction over the interpleader) relate to the substantive merits of the defense, not to the sufficiency of the cross claims necessary to survive a motion to dismiss. In any event, Certain Underwriters maintain, the moving defendants' challenge also fails to provide any admissible or persuasive support for the factual allegations on which they rely in arguing against subject matter jurisdiction.

Finally, Certain Underwriters contend that dismissal pursuant to Colorado River Water Conservation Dist. v. United States, 424 U.S. 800 (1976) is inappropriate. That doctrine is reserved for exceptional circumstances and the presumption favors maintaining jurisdiction. Moreover, the state and federal cases must involve substantially the same parties and issues and neither the Cahaly plaintiffs nor Certain Underwriters are parties in the Pennsylvania case and the Cahaly Judgment is not a part of that case. Thus, Certain Underwriters

> agree that the Pennsylvania court is best positioned to enforce the settlement in the first instance, but that decision cannot and will not resolve the Cahaly Plaintiffs' claim against the Benistar Defendants or the rights to reach and apply the settlement funds held by Certain Underwriters.

Certain Underwriters are correct and the Court finds that it

is appropriate to rule on defendants' motion to dismiss at this time. Certain Underwriters' explicitly acknowledge that the motion to enforce the settlement should be decided in the first instance in Pennsylvania. The pendency of that action is not, however, a persuasive reason to dismiss the cross claims and the Court will, therefore, deny the motion to dismiss without prejudice to defendants moving for reconsideration in the event that the Pennsylvania Superior Court finds the settlement unenforceable.

**2. "Supplemental" motions to dismiss for lack of jurisdiction or to stay the Reach and Apply Defendants' cross claims**

Certain Underwriters filed their opposition to the moving defendants' motion to dismiss on January 27, 2009. The next day, seemingly unaware of that opposition, defendants BASI, Benistar Insurance Group and Bursey filed a "supplemental" motion to dismiss or stay the Reach and Apply Defendants' cross claims pursuant to Colorado River in light of the motion to enforce the settlement agreement filed the previous week in Pennsylvania. Nearly two weeks later, Step and Benistar 419 filed an identical "supplemental" motion to dismiss or stay the cross claims.

Certain Underwriters opposed both motions (and Travelers echoed that opposition) because, they contend, nothing had changed to warrant a different outcome on the same argument

already presented in the original motion to dismiss.[3] They repeat that this Court should be mindful of the motion pending in Pennsylvania and "sequence [its] action" accordingly but that the Pennsylvania action in no way warrants dismissal or abstention pursuant to Colorado River.

Certain Underwriters are again correct and these "supplemental" motions will also be denied without prejudice with the same caveat as above.

**3. Certain Underwriters' motion to dismiss Counts I-IV of Bursey's counterclaims**

Bursey brings four counterclaims (apparently on behalf of all plaintiffs in the Pennsylvania litigation) for over $3 billion against Certain Underwriters for alleged unlawful conduct related to the negotiation of the Pennsylvania Settlement. He asserts that Certain Underwriters 1) took inconsistent positions during settlement negotiations regarding the binding nature of the proposed settlement agreement, 2) misrepresented certain facts and policy provisions, 3) refused to offer a prompt and equitable settlement, 4) took unreasonable negotiating positions, 5) delayed the consummation of the settlement and procurement of purported settlement proceeds and 6) improperly used interpleader in this action despite the fact that settlement funds were in dispute.

---

[3] The only material difference seems to be that Bursey has joined one of the motions to dismiss.

Certain Underwriters moved to dismiss those claims in January, 2009. Two weeks later, Bursey moved for an extension of time to oppose the motion until a date set at the February, 2009 status conference. No date appears to have been set and the motion for an extension of time was allowed electronically in March, 2009. In light of the March, 2009 stay, Bursey apparently decided to postpone any planned opposition until two days before the Court's most recent hearing. In his opposition, he argues that the motion to dismiss should be denied as premature but also responds to arguments against each particular claim. The Court disagrees with Bursey's contention about prematurity and, accordingly, each count is considered in turn.

**a. Unfair Insurance Claims Settlement Practices (Count I)**

In Count I, Bursey alleges that Certain Underwriters engaged in unfair and deceptive business practices with respect to the settlement negotiations in the Pennsylvania suit. Certain Underwriters contend that, although Bursey does not identify the law upon which he relies in bringing the claim, no relevant law provides him with a private cause of action. In particular, although Massachusetts, Connecticut and Pennsylvania all statutorily prohibit unfair insurance claims settlement practices, see M.G.L. c. 176D, Conn. Gen. Stat. 38a-815, 40 Pa. Stat. Ann. §§ 1171.1, et seq., and 31 Pa. Code §§ 146.1, et seq., none of those statutes provides a remedy for an individual such

as Bursey injured by such practices.

Bursey's response changes direction. Although not labeled as such, he contends that Count I actually states a claim for common law fraud and deceit. He has properly alleged such a cause of action, he argues, because Count I claims that Certain Underwriters made willful and knowing false statements to Bursey concerning policy provisions to induce certain defendants to settle the claims in Pennsylvania for less than they would have otherwise.

Not only is Bursey's contention about what cause of action he intended to bring unconvincing, the claim still fails as pled. Fed. R. Civ. P. 9(b) mandates that in all averments of fraud or mistake "a party must state with particularity the circumstances constituting fraud or mistake." To satisfy the requirement, the complaint must, at a minimum, specify the "time, place, and content of the alleged false or fraudulent representations." Arruda v. Sears, Roebuck & Co., 310 F.3d 13, 18-19 (1st Cir. 2002). Bursey's complaint contains no allegations that meet this requirement and instead summarily states that generic false statements were made during negotiations. The motion to dismiss will, therefore, be allowed and Count I is dismissed without prejudice.

**b. Violation of M.G.L. c. 93A (Count II)**

In Count II, Bursey alleges that Certain Underwriters

engaged in unfair and deceptive business practices in violation of M.G.L. c. 93A. Certain Underwrites maintain that, to establish such a claim, Bursey must prove that

> the center of gravity of the circumstances that give rise to the claim [occurred] primarily and substantially within the Commonwealth [of Massachusetts].

Kuwaiti Danish Computer Co. v. Digital Equip. Corp., 781 N.E.2d 787, 799 (Mass. 2003). Because the only acts that Bursey alleges occurred within Massachusetts relate entirely to the filing of this suit, Certain Underwriters argue that his complaint does not give rise to Chapter 93A liability. See Garshman Co. v. Gen. Elec. Co., 176 F.3d 1, 7 (1st Cir. 1999).

Bursey responds by again clarifying his cause of action. He states that he is claiming a violation of the Massachusetts Unfair Insurance Practices statute, M.G.L. c. 176D, § 3, which may be enforced by private parties through Chapter 93A. E.g., Fed. Ins. Co. v. HPSC, Inc., 480 F.3d 26, 35 (1st Cir. 2007) (citations omitted). Bursey then restates Certain Underwriters' alleged violations and contends that they fall under the purview of M.G.L. c. 176D, § 3. Finally, he contends that the violations occurred substantially in Massachusetts because Certain Underwriters brought its "abusive" claims against Bursey and the Pennsylvania plaintiffs in Massachusetts.

Bursey's argument is again unavailing. As drafted, his counterclaims focus on alleged wrongdoing associated with the

settlement negotiations in Pennsylvania. To the extent that part of his claim is that Certain Underwriters used this case to "force" a settlement in Pennsylvania, there is no concrete basis for such an allegation and, in any event, it does not follow that the alleged wrongdoing occurred substantially in Massachusetts. His claim will, therefore, be dismissed without prejudice subject to the possibility of an amendment explicitly detailing statutory violations that took place in the Commonwealth of Massachusetts.

**c. Violation of the Connecticut Unfair Trade Practices Act (CUTPA) (Count III)**

Count III alleges that Certain Underwriters willfully and knowingly engaged in unfair and deceptive conduct in violation of CUTPA, Conn. Gen. Stat. § 42-110a, et seq. Certain Underwriters argue that CUTPA is not available to a third-party claimant (such as Bursey) seeking to enforce violations of Connecticut Unfair Insurance Practices Act ("CUIPA") against another party's insurer when there is no subrogation or judicial determination in the third party's favor against the insured. The statute does not confer obligations on insurers to third-party claimants during settlement negotiations because such a duty would interfere with the insurer's ability to act primarily for the benefit of its insured. See Carford v. Empire Fire & Marine Ins. Co., 891 A.2d 55, 58-59, 62 (Conn. App. Ct. 2006). Because Bursey is not insured by Certain Underwriters, he cannot succeed on a claim under CUPTA against them.

Bursey responds that Count III was intended to allege violations of CUIPA through CUPTA and independent violations of CUPTA unrelated to CUIPA violations. With respect to the latter, he states, Certain Underwriters' arguments about privity of contract are irrelevant. Bursey then cites a Massachusetts (not Connecticut) case for the proposition that trade practices are unfair when they offend public policy or are immoral, unethical, oppressive or unscrupulous and refers back to Count II to claim that Certain Underwriters engaged in alleged wrongdoing by 1) providing settlement information to Koresko who passed it on to the plaintiffs in this case and 2) using this Court to enforce a settlement to which the parties do not agree.

Bursey's response is meritless and nonsensical. His counterclaims are cursory and do not clearly support the characterization that they are meant to bring claims for general CUPTA violations independent of alleged insurance wrongs in violation of CUIPA. Moreover, his citation to Massachusetts law and arguments in that regard are inapposite. It is again clear that Bursey's counterclaims are deficiently pled and thus they will be dismissed without prejudice.

**d. Abuse of Process (Count IV)**

Count IV of Bursey's counterclaim alleges that Certain Underwriters engaged in abuse of process in filing its cross claims and third-party claims. Certain Underwriters contend that

they filed those claims only after this Court enjoined them from disbursing the settlement proceeds and, moreover, they filed the claims to enable them to bring before this Court all necessary parties for an interpleader action. They assert that they are disinterested stakeholders of certain settlement proceeds and invoked the federal court procedure specifically designed to bring interested parties before the court to determine their respective rights. That is not abuse of process. Hatch v. Reliance Ins. Co., 758 F.2d 409, 415 (9th Cir. 1985) ("There is no abuse of process where a litigant avails him/herself of a remedy designed for the precise problem the litigant seeks to remedy [by employing interpleader]".).

Bursey retorts that Certain Underwriters again misunderstand his counterclaim which alleges that they abused process when they

> filed counterclaims designed to improve [their] own position, while compromising Mr. Bursey and the STEP Plaintiffs' claims in the [Pennsylvania] Action.

Abuse of process is 1) process that was used 2) for an ulterior or illegitimate purpose 3) resulting in damage. E.g., Millennium Equity Holdings, LLC v. Mahlowitz, 925 N.E.2d 513, 522 (Mass. 2010). Bursey contends that Certain Underwriters brought their cross claims for interpleader and enforcement of the Pennsylvania Settlement for the ulterior purpose of forcing consummation of a settlement to which the Pennsylvania plaintiffs do not consent and for less than their claims are worth. He also asserts that

Certain Underwriters are not a disinterested stakeholder because they have a financial interest in the enforceability of the Pennsylvania Settlement.

Although such a claim is at least colorable, Bursey's characterization of the alleged abuse of process is obscure. The counterclaims are cursory and provide little, if any, material allegations to support a claim for abuse of process apart from threadbare assertions about the elements of the tort. Just as with the other three counts, therefore, this claim will be dismissed without prejudice.

**RESTATED ORDER**

In accordance with the foregoing and as previously announced at the hearing on August 5, 2010,

1) defendants' motion and "supplemental" motions to dismiss (Docket Nos. 82, 111 and 117) is **DENIED** without prejudice to defendants moving for reconsideration in the event that the Pennsylvania Superior Court finds the settlement unenforceable; and

2) Certain Underwriters' motion to dismiss (Docket No. 107) is **ALLOWED** and the counterclaims are dismissed without prejudice.

**So ordered.**

Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated August 12, 2010