United States District Court
District of Massachusetts

```
_____
                              )
JOSEPH IANTOSCA, Individually )
and as Trustee of the Faxon   )
Heights Apartments Realty Trust)
and Fern Realty Trust, BELRIDGE)
CORPORATION, GAIL A. CAHALY,  )
JEFFREY M. JOHNSTON, BELLEMORE)
ASSOCIATES, LLC, and          )
MASSACHUSETTS LUMBER COMPANY, )
INC.,                         )
         Plaintiffs,          )
                              )
         v.                   )
                              )
BENISTAR ADMIN SERVICES, INC.,)
DANIEL CARPENTER, MOLLY       )
CARPENTER, BENISTAR PROPERTY  )   Civil Action No.
EXCHANGE TRUST COMPANY, INC., )   08-11785-NMG
BENISTAR LTD., BENISTAR EMPLOYER)
SERVICES TRUST CORPORATION,   )
CARPENTER FINANCIAL GROUP, LLC,)
STEP PLAN SERVICE INC., BENISTAR)
INSURANCE GROUP, INC., and    )
BENISTAR 419 PLAN SERVICES INC.,)
         Defendants,          )
                              )
TRAVELERS INSURANCE COMPANY and)
CERTAIN UNDERWRITERS AT LLOYD'S,)
LONDON,                       )
         Reach and Apply      )
         Defendants.          )
_____)
                              )
CERTAIN UNDERWRITERS AT LLOYD'S,)
LONDON and All Participating  )
Insurers and Syndicates,      )
         Third-Party Plaintiff,)
                              )
         v.                   )
                              )
WAYNE H. BURSEY,              )
         Third-Party Defendant.)
_____)
```

**MEMORANDUM & ORDER**

**GORTON, J.**

This case arises from the plaintiffs' effort to recover on a multimillion dollar Massachusetts state court judgment against some of the defendants.

I.  **Factual Background**

Plaintiffs claim that they are judgment creditors of several of the defendants in an aggregate of $20 million, only a portion of which has been paid. That judgment ("the Cahaly Judgment") is the result of an action in the Massachusetts Superior Court Department for Suffolk County ("the Cahaly Litigation") in which it was held that several of the defendants improperly invested plaintiffs' escrowed funds.[1]

Defendants Benistar Property Exchange Trust Company, Daniel Carpenter ("Carpenter"), Molly Carpenter, Benistar Admin Services, Inc. ("BASI"), Benistar Ltd., Benistar Employer Services Trust Corporation and Carpenter Financial Group, LLC (together "the Original Defendants") were parties to the Cahaly Litigation and are subject to the resulting judgment. Not all of those parties were originally named in the Cahaly Litigation but, in September, 2003, the state court "pierced the corporate veil" and extended liability to additional entities owned by Carpenter

---

[1] That case is captioned: Cahaly et al. v. Benistar Property Exchange Trust Co., Inc., No. 01-0116-BLS (Mass. Sup. Ct., filed Jan. 2001).

and his wife. The remaining defendants in this case, Benistar Insurance Group, Benistar 419 Plan Services, Inc. ("Benistar 419") and Step Plan Services Inc. ("Step") (together "the New Defendants"), were not parties to the Cahaly Litigation.

Plaintiffs allege that 1) the defendants have recently settled a Pennsylvania lawsuit brought by the defendants ("the Pennsylvania Settlement") and 2) Travelers Insurance Company ("Travelers") and Certain Underwriters of Lloyd's, London ("Certain Underwriters") (together "the Reach and Apply Defendants") are poised to deliver the proceeds of that settlement to the defendants.[2] Plaintiffs seek to reach and apply those proceeds in satisfaction of the Cahaly Judgment.

The Pennsylvania Settlement arises out of an action brought against John Koresko ("Koresko") and several entities he owned by the New Defendants, Wayne Bursey ("Bursey") and BASI (which was also a party to the Cahaly Litigation).[3] The purported settlement is for approximately $4.5 million. Although not all of the same entities are both judgment debtors in the Cahaly Litigation and plaintiffs in the Pennsylvania litigation,

---

[2] In subsequent filings, ACE Capital Ltd. and Columbia Casualty Company state that they were improperly listed as "Underwriters at Lloyd's, London" but are appearing as "Certain Underwriters" which is the term as to which they will hereafter be referred.

[3] That case is captioned: <u>Step Plan Services, Inc, et al.</u> v. <u>Koresko Associates</u>, No. 7718 (Court of Common Pleas, Philadelphia County, PA, filed March, 2004).

plaintiffs in this case allege that the defendants have abused and are abusing the corporate form in order to avoid the Cahaly Judgment.

The defendants initially asserted that the entire Pennsylvania Settlement was payable to Step and that, because Step was not a party to the Cahaly Litigation, the plaintiffs cannot enforce the Cahaly Judgment against it.  Defendants maintained (without explanation) that the settlement was payable to Benistar 419, another entity not a party to the Cahaly Judgment and, thus, allegedly immune from judgment in this case.

The defendants have also asserted that the Cahaly Judgment precluded any recovery from the New Defendants because 1) that judgment dismissed with prejudice any claims (including veil-piercing claims) against Jane Doe affiliates of the Benistar companies and 2) the New Defendants qualified as "Jane Does".  In granting the plaintiffs' motion for a preliminary injunction in November, 2008, however, this Court found that the New Defendants did not qualify as "Jane Does" but conceded that it was "reluctant to over-interpret state court judgments."  As a condition of the imposed preliminary injunction, therefore, the Court required plaintiffs to seek clarification of the Cahaly Judgment from the Suffolk Superior Court.  Plaintiffs did so and their motion for clarification was decided in May, 2010. Massachusetts Superior Court Judge Stephen E. Neel held that the

interpretations and analyses of this Court and of the First Circuit Court of Appeals were consistent with his understanding of the Cahaly Judgment and that there was no persuasive reason to conclude otherwise.

## II. **Procedural History**

Plaintiffs initiated this action in Suffolk Superior Court in October, 2008, and obtained an ex parte, temporary restraining order enjoining the Reach and Apply Defendants from conveying or disposing of any property of the defendants with respect to the Pennsylvania Settlement.

The case was then removed to this Court by the defendants and they promptly filed motions to dismiss. Shortly thereafter, the plaintiffs moved to extend the state court's temporary restraining order. On November 21, 2008, this Court entered a preliminary injunction barring the Reach and Apply Defendants from distributing any proceeds of the Pennsylvania Settlement to the defendants. The injunction was imposed for a six-month period subject to extension for good cause shown. Step and Benistar 419 timely appealed to the First Circuit Court of Appeals to vacate the injunction.

On November 14, 2008, while the motion for a preliminary injunction was pending, plaintiffs filed an amended complaint. The defendants (in three separate but substantially identical motions) moved to dismiss the amended complaint. Several

defendants also filed a "supplemental" motion to dismiss.

On December 1, 2008, Certain Underwriters, a Reach and Apply Defendant, filed an answer along with counterclaims against plaintiffs and cross claims against defendants seeking 1) to enforce the Pennsylvania Settlement if necessary and 2) to interplead the settlement proceeds into this Court for judicial distribution. Certain Underwriters later filed a third-party complaint making the same claims against Bursey who was the only plaintiff in the Pennsylvania litigation not, at that time, named as a defendant in this case. They apparently did so in order to bring into this case all parties with any interest in the disposition of the Pennsylvania Settlement.

Bursey subsequently filed third-party counterclaims on behalf of himself and the other defendants against 1) Certain Underwriters, alleging unfair insurance claim settlement practices, abuse of process and violations of the Massachusetts Consumer Protection Act, Mass. Gen. Laws ch. 93A, and the Connecticut Unfair Trade Practices Act ("CUPTA"), Conn. Gen. Stat. § 42-110a, et seq., and 2) the plaintiffs, alleging malicious prosecution and violations of Mass. Gen. Laws ch. 93A.

Predictably, the filing of counterclaims, cross claims and third-party claims was followed by another round of motions to dismiss. All of the defendants in this case filed a motion to dismiss Certain Underwriters' cross claims based upon the alleged

unenforceability of the Pennsylvania Settlement.[4]  Thereafter, Certain Underwriters moved to dismiss Bursey's third-party counterclaims and also moved to stay this case with respect to all claims by or against them.  As grounds they asserted that a motion to enforce the Pennsylvania Settlement had been filed in January, 2009, in the Pennsylvania state court and that resolution of that motion would have an impact on all claims relating to Certain Underwriters.  The plaintiffs in that case apparently contested the reported settlement and the defendants in that case (the entities insured by the Reach and Apply Defendants) moved to enforce it.

The defendants BASI, Benistar Insurance Group and Bursey subsequently filed a "supplemental" motion to dismiss or stay Certain Underwriters' cross claims pursuant to the Colorado River abstention doctrine.  Defendants Step and Benistar 419 followed suit with a similar motion.  In February, 2009, all of the defendants also moved to stay the plaintiffs' claims pending resolution of the motion for clarification of the Cahaly Judgment which had been filed in Suffolk Superior Court.  The defendants also moved to vacate the preliminary injunction.

This Court heard oral argument on the motions to stay at a

---

[4] That motion was temporarily and inadvertently allowed in January, 2009 but that allowance was later vacated and the motion to dismiss was denied in the Court's August, 2010 Memorandum & Order.

status conference held on February 25, 2009. At that hearing the Court granted the Reach and Apply Defendants' motions to stay and stayed all matters with respect to them for a period of 90 days. After further briefing, the Court concluded that a short stay of the entire case was warranted and, on March 9, 2009, ordered a stay for 90 days to run from February 25, 2009.

The preliminary injunction entered on November 21, 2008 was due to expire by its terms during the course of the stay (on May 21, 2009). After initially seeking and being denied relief in the First Circuit Court of Appeals, plaintiffs moved to extend the injunction in this Court for another six months. This Court allowed that motion over the defendants' opposition and extended the injunction "until further order of this Court". The defendants then moved for reconsideration of its motion and appealed the issuance of the extended injunction to the First Circuit.

On July 30, 2009, this Court issued an Memorandum and Order ("M&O") denying six motions to dismiss by the defendants as well as defendants' motions to vacate the preliminary injunction and to reconsider extending the injunction. The Court did not, however, rule on all motions pending at that time and motions for miscellaneous relief and to dismiss Certain Underwriters' cross claims and Bursey's third-party counterclaims remained outstanding.

Defendants timely appealed the July, 2009 M&O and it was consolidated with the appeal already pending in the First Circuit Court of Appeals.  On May 3, 2010, the First Circuit issued an opinion affirming this Court's rulings in all respects.  In a Memorandum and Order on August 12, 2010, the Court denied the defendants' additional motions to dismiss and allowed Certain Underwriters' motion to dismiss the counterclaims against it without prejudice.  On December 21, 2010, the Court allowed a joint motion for a protective order limiting the use and disposition of certain confidential information and documents.

Currently before the Court are 1) motion of the United States to intervene, 2) defendants' motion to transfer the case to the District of Connecticut and 3) plaintiffs' motion for an order requiring the defendants to appear for their depositions.  On February 9, 2011, the Court issued an order stating that, if defense counsel wished to oppose plaintiffs' motion to require depositions, it must do so on or before February 11, 2011.

On February 11, 2011, Certain Underwriters submitted a statement asserting that they neither support nor oppose the motion to transfer but implore the Court not to increase materially their cost of participating in this action. Plaintiffs have filed an opposition to the defendants' motion to transfer and the defendants have filed an opposition to the plaintiffs' motion for an expedited order to appear at

depositions.

## III. Update on Related Cases

The defendants report that the Pennsylvania settlement proceedings have been concluded. The intermediate appellate court in Pennsylvania has ruled that the settlement is enforceable but the plaintiffs there (some of the defendants here) have moved for reconsideration. A ruling on that motion is under advisement. On February 7, 2011, in the Cahaly Action, Suffolk Superior Court Judge Stephen E. Neel held that Merrill Lynch is jointly and severally liable to the plaintiffs for approximately $8.6 million in compensatory damages, $1 million in consequential damages and $9.7 million in punitive damages.

## IV. Pending Motions

### A. United States' Motion to Intervene and Defendants' Motion to Transfer

The United States ("the government") moves to intervene in this case, pursuant to Fed. R. Civ. P. 24(a)(2) and (b)(1)(A), and 26 U.S.C. § 7424, alleging that federal tax liens against BASI and Benistar 419 have attached to any proceeds to which those parties are entitled as a result of the Pennsylvania Settlement. The government alleges that, on July 8, 2009, the Secretary of the Treasury made identical assessments for tax penalties, pursuant to 26 U.S.C. § 6708, against both BASI and Benistar 419 for $1,120,000, neither of which has been paid.

The defendants respond that the government's motion to intervene should be granted only if this case is transferred to the District of Connecticut. Accordingly, on January 28, 2011, the defendants moved to transfer the case.

**1. Motion to Transfer**

Pursuant to 28 U.S.C. § 1404(a), the Court has the discretion to transfer a case to another district where it might have been brought "for the convenience of parties and witnesses, in the interest of justice." The party seeking to transfer the case has the burden of overcoming a strong presumption in favor of keeping the case in the forum that the plaintiffs chose. Astro-Med, Inc. v. Nihon Kohden Am., Inc., 591 F.3d 1, 13 (1st Cir. 2009).

The legitimacy of the government's alleged tax liens is the subject of pending challenges in the United States District Court for the District of Connecticut ("the IRS Litigation"). The defendants argue that transfer is proper because the District of Connecticut's decision in the IRS Litigation will materially affect the plaintiffs' damages in this action. Even if the case is transferred, however, there is no guaranty that it will be joined with the IRS Litigation. Furthermore, this Court is capable of assessing the relative priority of the IRS liens and the plaintiffs' claims. Thus, the location of the IRS Litigation has little relevance to the appropriate venue for this action.

The defendants also contend that transfer is appropriate because the judgment against Merrill Lynch on February 7, 2011 in the Suffolk Superior Court has a direct and material impact on the defendants' debt to the plaintiffs and renders this case moot. If the defendants are correct, however, transfer to Connecticut will only complicate matters. If this action is, in fact, rendered moot, it should be dismissed, not transferred, yet defendants have not moved to dismiss.

Finally, the Defendants advocate that transfer is warranted because all of the defendants are domiciled in Connecticut and none of the plaintiffs, who reside in Massachusetts, will have to testify at trial. That argument is unpersuasive for the following reasons:

1) there is a strong presumption in favor of keeping the case in the jurisdiction chosen by the plaintiffs;

2) the interest of justice is ill served by transferring a case in which the Court has already entered a preliminary injunction and made other substantive decisions, see Oral-B Labs., Inc. v. Mi-Lor Corp., 611 F. Supp. 460, 462-63 (S.D.N.Y. 1985), i.e. the plaintiffs are Massachusetts residents, the case has been litigated in Massachusetts for approximately two and one-half years and this Court has issued several comprehensive orders; and

3) this Court, in its July, 2009 M&O, has previously analyzed and rejected defendants' motion to transfer the case to the District of Connecticut in which defendants alleged, among other things, lack of personal jurisdiction and improper venue.

In sum, the interest of justice counsels against transfer and the defendants' motion will be denied.

### 2. Motion to Intervene

Fed. R. Civ. P. 24(a)(2) provides that, on a timely motion, the Court "must" permit anyone to intervene who:

> claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

With respect to intervention by the government, 26 U.S.C. § 7424 provides that:

> the United States may intervene in such action or suit to assert any lien arising under this title on the property which is the subject of such action or suit.

The Court will allow the government's motion because, if the tax liens have priority over the plaintiffs' claims, a determination on the merits in this case may impede the government's ability to recover what it is owed. Defendants argue that intervention is likely to delay this case but it has already been stayed pending resolution of the Pennsylvania Settlement by the Pennsylvania courts. Furthermore, the defendants themselves have reported that the United States District Court for the District of Connecticut will resolve the IRS litigation within six months. Thus, any delay is not likely to have a prejudicial effect on this action.

### B. Motion for Order Requiring Defendants to Appear for Their Depositions

On February 4, 2011, the plaintiffs moved for an expedited

order requiring the defendants to appear for their depositions and to extend the discovery deadline to March 1, 2011. Plaintiffs assert that they have repeatedly attempted to schedule the depositions well before the discovery deadline and that defendants have ignored or refused their requests.

Plaintiffs apparently served notices of depositions in January and February of 2009 and followed up in January, 2010, seeking documents they needed to prepare for the depositions. Defendants apparently did not provide those documents until November, 2010. On December 13, 2010, January 24, February 1, and February 4, 2011, plaintiffs contacted the defendants in an effort to schedule those depositions. In their most recent request, plaintiffs offered to conduct the depositions in Hartford, Connecticut where the defendants are domiciled. Defendants either failed to respond or refused to agree on a date. Moreover, defendants refused to agree to seek an extension of the discovery schedule. Plaintiffs have provided the Court with copies of the correspondence/emails and deposition notices sent to defense counsel.

The defendants oppose the motion on the grounds that the plaintiffs have not shown good cause to extend the schedule, as required by Fed. R. Civ. P. 16(b)(4). Specifically, defendants assert that 1) the plaintiffs are at fault for neglecting to take the subject depositions earlier and for disregarding the Court's

August 11, 2010 Scheduling Order, 2) the case is moot in light of the recent decision in the Suffolk Superior Court, 3) plaintiffs refused to appear for depositions noticed by the defendants in January, 2010, 4) plaintiffs have failed to respond to defendants' interrogatories and document requests and 5) the plaintiffs suddenly announced their intention to take six depositions when they had not been discussed previously. Finally, the defendants claim that they were unavailable during the week of January 10, 2011 but offered to re-schedule.

The defendants' arguments are unconvincing. Unlike the plaintiffs, they have failed to provide the Court with documentary evidence that they offered to schedule the depositions in good faith. To the contrary, the correspondence provided by the plaintiffs indicates that the plaintiffs have tried on numerous occasions to schedule the depositions and to extend the discovery schedule but that the defendants have either refused or failed to respond. Consequently, plaintiffs' motion for an order requiring the defendants to appear for their depositions and to extend the discovery deadline will be allowed, in material part.

Plaintiffs also move for sanctions in the form of costs associated with this motion due to the defendants' failure to appear for their depositions. The Court will deny plaintiffs' motion for sanctions without prejudice but defendants are

forewarned that if all discovery, including the subject depositions duly noticed by the plaintiffs, is not concluded within the time proscribed, the Court will entertain a renewed motion for sanctions to include all costs and attorneys fees incurred in connection with defendants' misconduct.

**ORDER**

In accordance with the foregoing,

1) Defendants' Motion to Transfer (Docket No. 199) is **DENIED**;

2) Motion of the United States to Intervene (Docket No. 196) is **ALLOWED;** and

3) Plaintiffs' Motion for an Expedited Order Requiring Defendants to Appear for Their Depositions, to Extend the Discovery Schedule and for Costs (Docket No. 201) is **ALLOWED,** in part, and **DENIED,** in part. The subject depositions will be noticed and completed before March 31, 2011. Sanctions will not be imposed at this time subject to reconsideration if this order is not met with full compliance.

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated February 18, 2011