United States District Court
District of Massachusetts

| | |
|---|---|
| JOSEPH IANTOSCA, Individually ) <br> and as Trustee of the Faxon ) <br> Heights Apartments Realty Trust ) <br> and Fern Realty Trust, BELRIDGE ) <br> CORPORATION, GAIL A. CAHALY, ) <br> JEFFREY M. JOHNSTON, BELLEMORE ) <br> ASSOCIATES, LLC, and ) <br> MASSACHUSETTS LUMBER COMPANY, ) <br> INC., ) <br>     Plaintiffs, ) <br> ) <br>     v. ) <br> ) <br> BENISTAR ADMIN SERVICES, INC., ) <br> DANIEL CARPENTER, MOLLY ) <br> CARPENTER, BENISTAR PROPERTY ) <br> EXCHANGE TRUST COMPANY, INC., ) <br> BENISTAR LTD., BENISTAR EMPLOYER ) <br> SERVICES TRUST CORPORATION, ) <br> CARPENTER FINANCIAL GROUP, LLC, ) <br> STEP PLAN SERVICE INC., BENISTAR ) <br> INSURANCE GROUP, INC., and ) <br> BENISTAR 419 PLAN SERVICES INC., ) <br>     Defendants, ) <br> ) <br> TRAVELERS INSURANCE COMPANY and ) <br> CERTAIN UNDERWRITERS AT LLOYD'S, ) <br> LONDON, ) <br>     Reach and Apply ) <br>     Defendants. ) <br> ) <br> CERTAIN UNDERWRITERS AT LLOYD'S, ) <br> LONDON and All Participating ) <br> Insurers and Syndicates, ) <br>     Third-Party Plaintiff, ) <br> ) <br>     v. ) <br> ) <br> WAYNE H. BURSEY, ) <br>     Third-Party Defendant. ) | Civil Action No. <br> 08-11785-NMG |

-1-

**MEMORANDUM & ORDER**

GORTON, J.

This action is scheduled to proceed at a bench trial in this Session on Monday, March 26, 2012. Currently before the Court is the defendants' motion for a jury trial on all claims by the plaintiffs and the government, a plaintiff by intervention. The motion is opposed by both the plaintiffs and the government.

## I. Background

Plaintiffs are judgment creditors of several of the defendants in an aggregate of $33 million, only $15.3 million of which has been paid. That judgment ("the Cahaly Judgment") is the result of an action in the Massachusetts Superior Court Department for Suffolk County ("the Cahaly Litigation") in which it was held that several of the defendants improperly invested plaintiffs' escrowed funds.[1]

Defendants Benistar Property Exchange Trust Company, Daniel Carpenter, Molly Carpenter, Benistar Admin Services, Inc. ("BASI"), Benistar Ltd., Benistar Employer Services Trust Corporation and Carpenter Financial Group, LLC (together "the Cahaly Defendants") were parties to the Cahaly Litigation and are liable under the resulting judgment. Not all of those parties

---

[1] That case is captioned: <u>Cahaly et al.</u> v. <u>Benistar Property Exchange Trust Co., Inc.</u>, No. 01-0116-BLS (Mass. Sup. Ct., filed Jan. 2001).

were originally named in the Cahaly Litigation but, in September, 2003, the state court "pierced the corporate veil" and extended liability to additional entities owned by Daniel and Molly Carpenter.

The remaining defendants in this case, Benistar Insurance Group, Benistar 419 Plan Services, Inc. ("Benistar 419") and Step Plan Services Inc. ("Step Plan"), were not parties to the Cahaly Litigation but were plaintiffs in a different lawsuit brought in Pennsylvania ("the Pennsylvania Litigation"). The Pennsylvania Litigation arises out of an action by those defendants, along with Wayne Bursey ("Bursey") and BASI (which was also a party to the Cahaly Litigation), against John Koresko ("Koresko") and several entities he owned.[2] The purported settlement is for approximately $4.5 million ("the Pennsylvania Settlement").

Travelers Insurance Company ("Travelers") and Certain Underwriters of Lloyd's, London ("Certain Underwriters") (together "the Reach and Apply Defendants") are poised to deliver the proceeds of the Pennsylvania Settlement to the defendants. Plaintiffs seek to reach and apply those proceeds in satisfaction of the Cahaly Judgment. Although not all of the same entities are both judgment debtors in the Cahaly Litigation and plaintiffs in the Pennsylvania Litigation, plaintiffs allege that the

---

[2] That case is captioned: Step Plan Services, Inc, et al. v. Koresko Associates, No. 7718 (Court of Common Pleas, Philadelphia County, PA, filed March, 2004).

defendants have abused and are abusing the corporate form in order to avoid the Cahaly Judgment.

The defendants maintain that Step Plan is the sole payee of the Pennsylvania Settlement proceeds and that, because that entity was not a party to the Cahaly Litigation, the plaintiffs cannot enforce the Cahaly Judgment against them.

This Court, after determining that the plaintiffs would likely succeed on the merits of their reach and apply claim, entered a preliminary injunction barring the Reach and Apply Defendants from distributing any proceeds of the Pennsylvania Settlement to the defendants until further order of the Court. Subsequently, in February, 2011, the Court allowed the government's motion to intervene in the case. The government seeks to enforce two federal tax liens, for $1.12 million dollars each, that it has filed against BASI and Benistar 419 with the Town of Simsbury, Connecticut. The government alleges that the liens attach to any proceeds to which those entities are entitled as a result of the Pennsylvania Settlement and have priority over plaintiffs' claims.

I. **Analysis**

   A. **Legal Standard**

The right to a jury trial is a fundamental right which should be "jealously guarded by the courts." See Jacob v. City of New York, 315 U.S. 752, 752 (1942). Under Fed. R. Civ. P.

38(a), a defendant has such a right where either the Seventh Amendment or a federal statute so requires. Because the defendants do not rely on a federal statute to support their claim of right to a jury trial, their claim depends upon the Seventh Amendment.

The Seventh Amendment limits the right to a jury trial to "[s]uits at common law", U.S. Const. Amend. VII, meaning suits in which "legal rights" rather than "equitable rights" were determined. Feltner v. Columbia Pictures Television, Inc., 523 U.S. 340, 348 (1998); Granfinanciera, S.A. v. Nordberg, 492 U.S. 33, 41 (1989). The right to a jury trial also attaches to suits seeking to vindicate statutory rights which are "analogous to common-law causes of action" and which ordinarily would have been decided in English law courts, not equity or admiralty courts, in the late 18th century. Granfinanciera, 492 U.S. at 42.

Thus, whether a defendant is entitled to trial by jury depends on whether his suit will resolve legal or equitable rights. The determination hinges on 1) whether the action is, or is analogous to, an action that would have been brought in a court of law or equity and 2) whether the nature of the remedy sought is legal or equitable. Tull v. United States, 481 U.S. 412, 417-18 (1987). The second stage of the inquiry is more important than the first. Id.

## A. Plaintiffs' Action

Plaintiffs seek 1) to reach and apply any right, title or interest the Cahaly Defendants may have in the proceeds from the Pennsylvania Settlement, 2) to reach and apply all of Step Plan's obligations to the Cahaly Defendants, 3) to hold all the defendants liable for the Cahaly Judgment pursuant to the doctrine of corporate disregard and 4) to set aside the allegedly fraudulent transfer of rights in the Pennsylvania Settlement to Step Plan.

Pursuant to the Massachusetts reach and apply statute, M.G.L. c. 214, § 3(6), a creditor may "reach and apply" a debtor's interest in property that cannot otherwise be executed against in an action at law. To obtain relief, a plaintiff must file a complaint against both the principal defendant and any third party who possesses property of, or owes a debt to, the principal defendant. In re Osgood, 203 B.R. 865, 869 (Bkrtcy. D. Mass. 1997). The plaintiff must also seek an injunction restraining the debtor or a third party from disposing of property which the plaintiff intends to reach and apply in satisfaction of its claim. Id. A plaintiff who has obtained such an injunction "has established an equitable attachment constituting security for satisfaction of a judgment." In re Ballarino, 180 B.R. 343, 348 (D. Mass. 1995).

The Massachusetts Supreme Judicial Court has stated that the

reach and apply statute "combines in a single proceeding two different matters or steps in procedure, one at law and the other in equity." Stockbridge v. Mixer, 215 Mass. 415, 418 (1913). The first step, "the establishment of an indebtedness on the part of the principal defendant to the plaintiff," is an action at law. Id. The second step is the equitable process of collecting an established debt "out of property rights which cannot be reached on an execution." Id. "In short, a bill to reach and apply is essentially a proceeding at law supplemented by an equitable attachment." Salvucci v. Sheehan, 349 Mass. 659, 662 (1965). Thus, a defendant is entitled to a jury trial with respect to his alleged indebtedness but is not entitled to a jury trial with respect to "the other branches of the case which relate to remedy and which are purely equitable in their nature." Id.

Here, plaintiffs have obtained a judgment at law against the Cahaly Defendants and are seeking to enforce that judgment through the reach and apply action. Although the indebtedness of the Cahaly Defendants is established, the issue of whether those defendants have a right to proceeds from the Pennsylvania Settlement is hotly contested because 1) BASI is the only Cahaly Defendant that was also a plaintiff in the Pennsylvania Litigation and 2) the settlement proceeds are purportedly to be paid only to Step Plan. Moreover, plaintiffs seek not only to

reach and apply the rights of the other Cahaly Defendants to the settlement proceeds but also to foreclose the rights thereto of the remaining defendants on the theory that all the entities are, in reality, alter egos of one another and/or that interests in the proceeds were fraudulently conveyed to Step Plan.

Under the theory of plaintiffs' case, therefore, their reach and apply claims are contingent upon their claims for corporate disregard and/or fraudulent conveyance. Because, for the reasons stated below, the Court finds that plaintiffs seek legal rather than equitable remedies, the Court concludes that the defendants are entitled to a jury trial with respect to all of plaintiffs' claims. Stockbridge, 215 Mass. at 418 (where a constitutional jury trial right exists, "a party cannot be deprived of that right because a change in the form of procedure has made it cognizable in courts of equity").

Claims involving fraud or the doctrine of piercing the corporate veil have roots in both courts of law and equity and, consequently, it is generally the nature of the remedy sought that resolves whether a right to jury trial attaches to such claims. See Wm. Passalacqua Builders v. Resnick Developers, 933 F.2d 131, 135-36 (2d Cir. 1991) (piercing the corporate veil); Hyde Props. v. McCoy, 507 F.2d 301, 305 (6th Cir. 1974) (fraud). Traditionally, legal remedies involve money damages whereas equitable remedies are "typically coercive, and are enforceable

directly on the person or thing to which they are directed." Int'l Fin. Servs. Corp. v. Chromas Tech. Canada, Inc., 356 F.3d 731, 736 (7th Cir. 2004).

Here, plaintiffs seek to collect the proceeds of the Pennsylvania Settlement to satisfy the judgment entered against the Cahaly Defendants. "The fact that [they] seek money indicates a legal action." Wm. Passalacqua Builders, 933 F.2d at 136 (and cases cited). That they use equitable procedural means to pursue that remedy, or that the funds have not yet been disbursed, does not alter the legal nature of their claims. See Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 210 (2002) ("[S]uits seeking (whether by judgment, injunction, or declaration) to compel the defendant to pay a sum of money to the plaintiff are suits for 'money damages'.... [a]nd money damages are, of course, the classic form of legal relief.").

First, through their veil-piercing claim, plaintiffs do not simply seek a determination that the corporate veil should be pierced but instead seek to enforce the Cahaly Judgment against all defendants. The nature of the relief sought, that is, the enforcement of a money judgment, is legal in nature. See Wm. Passalacqua Builders, 933 F.2d at 136 (where judgment-creditor sought to pierce the corporate veil and enforce a judgment obtained against a subsidiary, nature of relief sought was legal). But see Int'l Fin. Servs. Corp., 356 F.3d at 736

(determining that, under Illinois law, piercing the corporate veil is an equitable remedy in part because the remedy itself does not result in money damages).

Second, with respect to their fraudulent conveyance claim, plaintiffs contend that the Cahaly Defendants' release of their right, title and interest in the Pennsylvania Settlement to Step Plan is intended to hinder, delay or defraud the plaintiffs' collection of their judgment and is thus a fraudulent conveyance. They therefore ask that, pursuant to the Massachusetts Uniform Fraudulent Transfer Act, M.G.L. c. 109A, the Court set aside the assignment of the right and foreclose Step Plan's interest in the settlement. In essence, plaintiffs' action is to recover an alleged fraudulent conveyance of a determinate sum of money (the entire Pennsylvania Settlement), a remedy which the Supreme Court has concluded would have been sought in a court of law in 18th-century England. See Granfinanciera, S.A. v. Nordberg, 492 U.S. 33, 46-49 (1989).

In sum, the Court concludes that plaintiffs seek legal remedies and that defendants are therefore entitled to a jury trial on plaintiffs' claims.

B.  The Government's Action

Pursuant to 26 U.S.C. §§ 7403 and 7424, the United States intervened in this case to enforce federal tax liens against BASI and Benistar 419. The government asks the Court to decide that

the tax penalty assessments underlying the liens are valid and that the liens may be enforced against any right BASI and Benistar 419 may have to the Pennsylvania Settlement.

The government concedes that BASI and Benistar 419 are entitled to a jury trial with respect to the validity of the tax penalty assessments underlying the liens but contends that, once the liens are established as valid, defendants have no right to a jury trial with respect to enforcing those liens against the Pennsylvania Settlement.

Even if validity is established, however, enforcement of the liens will require the government to prove that the Pennsylvania Settlement is the property of BASI and Benistar and not, as defendants maintain, solely the property of Step Plan.  The government posits two alternative theories by which to establish BASI and Benistar 419's property rights: it contends that Step Plan either 1) holds title to the settlement as nominee of BASI and/or Benistar 419 or 2) is the alter ego of BASI and/or Benistar 419.

In all material respects for purposes of analyzing the defendants' right to a jury trial, the government's alter ego theory is the equivalent of plaintiffs' claim of piercing the corporate veil and its nominee theory is the equivalent of plaintiffs' fraudulent conveyance claim.  Thus, for the same reasons, the Court concludes the defendants are entitled to a

jury trial with respect to the government's alter ego and nominee claims.

## ORDER

In accordance with the foregoing, Defendants' Motion for Trial by Jury (Docket No. 295) is **ALLOWED**.

**So ordered.**

_____
Nathaniel M. Gorton
United States District Judge

Dated February 6, 2012