_____

| | |
|---|---|
| JOSEPH J. IANTOSCA and DAVID A. ) <br> IANTOSCA, as guardians of Joseph ) <br> Iantosca Sr. and as Trustees of ) <br> the Faxon Heights Apartments ) <br> Realty Trust and Fern Realty ) <br> Trust, BELRIDGE CORPORATION, ) <br> GAIL A. CAHALY, JEFFREY M. ) <br> JOHNSTON, BELLEMORE ASSOCIATES, ) <br> LLC, and MASSACHUSETTS LUMBER ) <br> COMPANY, INC., ) <br>       Plaintiffs, ) <br> ) <br>       v. ) <br> ) <br> BENISTAR ADMIN SERVICES, INC., ) <br> DANIEL CARPENTER, MOLLY ) <br> CARPENTER, BENISTAR PROPERTY ) <br> EXCHANGE TRUST COMPANY, INC., ) <br> BENISTAR LTD., BENISTAR EMPLOYER ) <br> SERVICES TRUST CORPORATION, ) <br> CARPENTER FINANCIAL GROUP, LLC, ) <br> STEP PLAN SERVICE INC., BENISTAR ) <br> INSURANCE GROUP, INC., and ) <br> BENISTAR 419 PLAN SERVICES INC., ) <br>       Defendants, ) <br> ) <br> TRAVELERS INSURANCE COMPANY and ) <br> CERTAIN UNDERWRITERS AT LLOYD'S, ) <br> LONDON, ) <br>       Reach and Apply ) <br>       Defendants. ) <br> _____ ) <br> ) <br> CERTAIN UNDERWRITERS AT LLOYD'S, ) <br> LONDON and All Participating ) <br> Insurers and Syndicates, ) <br>       Third-Party Plaintiff, ) <br> ) <br>       v. ) <br> ) <br> WAYNE H. BURSEY, ) <br>       Third-Party Defendant. ) <br> _____ ) | Civil Action No. <br> 08-11785-NMG |

**MEMORANDUM & ORDER**

**GORTON, J.**

In an effort to recover on a multimillion dollar judgment obtained in Massachusetts state court, plaintiffs have sued to reach and apply the defendants interest in a settlement arising from litigation in Pennsylvania. The United States has intervened to enforce federal tax liens assessed against two of the defendants.

## I.  Background

Plaintiffs are judgment creditors of several of the defendants in an aggregate of $33 million, only $15.3 million of which has been paid. That judgment ("the Cahaly Judgment") is the result of an action in the Massachusetts Superior Court Department for Suffolk County ("the Cahaly Litigation") in which it was held that several of the defendants improperly invested plaintiffs' escrowed funds.

Defendants Benistar Property Exchange Trust Company, Daniel Carpenter, Molly Carpenter, Benistar Admin Services, Inc. ("BASI"), Benistar Ltd., Benistar Employer Services Trust Corporation and Carpenter Financial Group, LLC (together "the Cahaly Defendants") were parties to the Cahaly Litigation and are liable under the resulting judgment. Not all of those parties were originally named in the Cahaly Litigation but, in September, 2003, the state court "pierced the corporate veil" and extended

-2-

liability to additional entities owned by Daniel and Molly Carpenter. The remaining defendants in this case, Benistar Insurance Group, Benistar 419 Plan Services, Inc. ("Benistar 419") and Step Plan Services Inc. ("Step Plan") (together "the New Defendants"), were not parties to the Cahaly Litigation.

Plaintiffs allege that 1) certain of the defendants are entitled to $4.5 million in settlement proceeds from litigation they initiated in Pennsylvania ("the Pennsylvania Settlement") and 2) Travelers Insurance Company ("Travelers") and Certain Underwriters of Lloyd's, London ("Certain Underwriters") (together "the Reach and Apply Defendants") are poised to deliver those proceeds to the defendants. Pursuant to M.G.L. c. 214, § 3(6), plaintiffs seek to reach and apply all defendants' interests in those proceeds to satisfy the Cahaly Judgment.

The Pennsylvania Settlement arises out of an action brought by the New Defendants, Wayne Bursey ("Bursey") and BASI against John Koresko ("Koresko") and several entities he owned. Only one defendant, BASI, is nominally both a judgment debtor in the Cahaly Litigation and a plaintiff in the Pennsylvania litigation, and defendants assert that the Pennsylvania Settlement will be paid only to Step Plan.[1]

---

[1] Defendants initially asserted that Step Plan was the sole payee of the Pennsylvania Settlement proceeds but then, without explanation, contended that the sole payee was Benistar 419. They now have reverted back to their original claim that Step Plan is the sole payee.

Defendants contend that, because Step Plan was not a party to the Cahaly Litigation, the plaintiffs cannot reach and apply its right to the Pennsylvania Settlement in order to enforce the Cahaly Judgment.  Plaintiffs respond that the Pennsylvania Settlement may, however, be reached and applied because defendants have abused and are abusing the corporate form and/or have fraudulently conveyed their interests in the Pennsylvania Settlement in order to avoid having to satisfy the Cahaly Judgment.

This Court, after determining that the plaintiffs would likely succeed on the merits of their reach and apply claim, entered a preliminary injunction barring the Reach and Apply Defendants from distributing any of the settlement proceeds to the defendants.  The injunction was imposed in November, 2008 for a six-month period subject to extension for good cause shown, and, upon motion from the plaintiffs, was subsequently extended "until further order of this Court".  Step Plan and Benistar 419 appealed the preliminary injunction to the First Circuit Court of Appeals and were denied relief.  <u>See</u> <u>Iantosca</u> v. <u>Step Plan Services, Inc.</u>, 604 F.3d 24, 34 (1st Cir. 2010) (affirming allowance of preliminary injunction).

In a further twist and turn, the Court allowed the government's motion to intervene in the case in February, 2011. The government seeks to enforce two federal tax liens, for $1.12

million dollars each, that it has filed against BASI and Benistar 419 with the Town of Simsbury, Connecticut. The government alleges that the liens attach to any proceeds to which those entities are entitled as a result of the Pennsylvania Settlement and have priority over plaintiffs' claims.

This action is scheduled to proceed to a jury trial in this Session on Monday, March 26, 2012. Currently before the Court are 1) defendants' motions for summary judgment with respect to both the plaintiffs' and the government's claims, 2) the government's motion for partial summary judgment on the issue of tax liability, 3) two motions to strike filed by the defendants and 4) a motion to strike and for sanctions filed by the plaintiffs.

## II. **Analysis**

### A. **Legal Standard**

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991). The burden is on the moving party to show, through the pleadings, discovery and affidavits, "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

A fact is material if it "might affect the outcome of the

suit under the governing law." <u>Anderson</u> v. <u>Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." <u>Id.</u> A genuine issue of material fact exists where the evidence with respect to the material fact in dispute "is such that a reasonable jury could return a verdict for the nonmoving party." <u>Id.</u>

Once the moving party has satisfied its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine, triable issue. <u>Celotex Corp.</u> v. <u>Catrett</u>, 477 U.S. 317, 324 (1986). The Court must view the entire record in the light most favorable to the non-moving party and indulge all reasonable inferences in that party's favor. <u>O'Connor</u> v. <u>Steeves</u>, 994 F.2d 905, 907 (1st Cir. 1993). Summary judgment is appropriate if, after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law.

**B.    Motions to Strike and for Sanctions**

There are currently three motions to strike pending: one motion to strike and for sanctions filed by the plaintiffs with respect to portions of the motions for summary judgment filed on behalf of Daniel and Molly Carpenter and two motions to strike filed by the defendants with respect to portions of the government's motion for summary judgment. The Court will deny

the motions to strike but will consider the facts alleged in each motion for summary judgment only to the extent that they are undisputed and based upon personal knowledge. The Court concludes that government's motion for summary judgment is supported by properly submitted evidence.

### C. Defendants' Motions for Summary Judgment with respect to Plaintiffs' Claims

#### 1. BASI, Benistar 419, Daniel Carpenter and Step Plan

The motions for summary judgment filed by BASI, Benistar 419 and Daniel Carpenter simply re-assert several arguments already raised and rejected by this Court and do not offer any additional undisputed evidence in support thereof. Those motions will therefore be denied.

First, this Court has already rejected defendants' arguments that proceeds of the Pennsylvania Settlement cannot be reached and applied because they are payable solely to entities not nominally subject to the Cahaly Judgment. There is sufficient evidence in the record from which a reasonable jury could determine that the defendants are abusing the corporate form and/or have engaged in fraudulent transfers in order to avoid the Cahaly Judgment. If plaintiffs prove such abuse or fraud, the proceeds from the Pennsylvania Settlement may be reached and applied in satisfaction of their judgment. Thus, to the extent that defendants' motions for summary judgment are based on such arguments, they are without merit.

Second, this Court has already rejected defendants' res judicata and collateral estoppel arguments based on the state court's dismissal of plaintiffs' claims against certain "Jane Doe Affiliates and Subsidiaries of Benistar Defendants and Jane Doe Entities controlled by Daniel Carpenter."  In their opposition to the preliminary injunction, defendants asserted (as they do now) that the Cahaly Judgment precluded any recovery from the New Defendants because the New Defendants qualify as "Jane Does".

The Court disagreed and entered the preliminary injunction. It concluded that the Cahaly Judgment was not intended to foreclose prospectively plaintiffs' ability to enforce that judgment against an entity later determined to be an alter ego of the Cahaly Defendants.  Nonetheless, the Court conceded that it was "reluctant to over-interpret state court judgments" and thus, as a condition of the continued validity of the preliminary injunction, required plaintiffs to seek clarification of the Cahaly Judgment from the Massachusetts Superior Court for Suffolk County.  Plaintiffs did so and their motion for clarification was decided in May, 2010.  Massachusetts Superior Court Judge Stephen E. Neel held that the interpretations and analyses of this Court (and of the First Circuit on appeal) were consistent with his understanding of the Cahaly Judgment and that there was no persuasive reason to conclude otherwise.  Thus, to the extent that defendants' motions for summary judgment are based on such

arguments previously raised and rejected, they are without merit.

Third, Step Plan's contends, without legal or factual support, that the Pennsylvania Settlement is property which may not be reached and applied because 1) the Cahaly Judgment is not final and 2) the settlement is "simply a payment to be made in the future" to Step Plan under an "executory contract" among the defendants. First, the Cahaly Judgment, which was affirmed by the Massachusetts Supreme Judicial Court in 2008, is final. Second, an executory contract is one in which the contracting parties owe one another ongoing duties of performance. Where all elements of performance have been accomplished leaving only an obligation to pay money, there is no executory contract. Matter of Dunes Casino Hotel, 63 B.R. 939, 948 (D.N.J. 1986). Step Plan's arguments with respect to executory contracts are thus singularly unavailing and do not support its motion for summary judgment.

### 2. Molly Carpenter

The undisputed facts demonstrate that the Massachusetts Superior Court has deemed Molly Carpenter's liability for $3.87 million under the Cahaly Judgment to be fully satisfied. Because she is no longer indebted to the plaintiffs, her motion for summary judgment will be allowed. Plaintiffs' concerns that defendants will re-assign the proceeds from the Pennsylvania Settlement to her are ill-founded because those proceeds are

subject, until further order of the Court, to the preliminary
injunction entered on November 21, 2008.

### D. Cross-Motions for Summary Judgment with respect to the Government's Complaint in Intervention

The government has moved to intervene in this case to
enforce identical $1.12 million federal tax liens assessed
against BASI and Benistar 419.  The government alleges that the
liens may be enforced against the interests of those entities in
the Pennsylvania Settlement.

The tax penalties which underlie the liens were assessed for
the respective failures of BASI and Benistar 419 to provide the
IRS with investor lists which the government contends each entity
was required to maintain from February 28, 2000 to at least
January 20, 2006.  It is undisputed that, in January, 2006, the
IRS requested BASI and Benistar 419 to produce investor lists and
that, to date, each entity has failed to do so.  The primary
disagreement between the parties is whether BASI and Benistar 419
were, in fact, statutorily required to maintain such lists.

The government contends that they were so required and
accordingly moves for partial summary judgment that the tax liens
are valid.[2]  BASI and Benistar 419, however, assert that they

---

[2] Genuine issues of fact that would remain to be proved at
trial, so the government contends, are that 1) the tax liens
attach to the defendants' right to proceeds from the Pennsylvania
Settlement and 2) the liens have priority over plaintiffs'
claims.

were never so required and move for summary judgment that the tax liens are invalid. Furthermore, they argue, they are entitled to summary judgment because 1) they had reasonable cause to believe they were not subject to the list requirement and associated penalties and 2) even if the tax liens are valid, the penalty assessed against them is excessive and the government's action violates their right to due process.

## 1. Origin of the Government's Liens

On January 20, 2006, the IRS sent BASI and Benistar 419 written requests to produce each list they were obligated to maintain pursuant to 26 U.S.C. § 6112 ("the 2006 list requests"). In response, BASI and Benistar 419 sent to the IRS typed, and unsigned, sheets of paper containing the statements "Not Liable, Not a Material Advisor," and "N/A".

In August, 2009, the IRS notified BASI and Benistar 419 that it had assessed a $1.12 million tax penalty against each of them for failing to provide the requested lists ("the 2009 lien notices"). The notice explained that the penalty was calculated based on $10,000 per day for 112 days (from February 18, 2006 to June 9, 2006) and referred to a "year/period end" of December 31, 2002.

In August, 2010, the IRS sent BASI and Benistar 419 notice of 1) its intent to levy on the tax penalties and 2) its filing of federal tax liens against each entity for $ 1.12 million with

the Town of Simsbury, Connecticut.  Shortly thereafter, BASI and
Benistar 419 timely requested Collection Due Process ("CDP")
hearings with respect to the government's lien and intent to
levy.  To date, a CDP hearing has not been scheduled and both
penalties remain unpaid.

### 2. Overview of the Relevant Statutory and Regulatory Provisions

During all times relevant to this action, the Tax Code has
required certain taxpayers to maintain investor lists with
respect to "reportable" or "listed" transactions and penalized
those who fail to make such lists available to the IRS upon
written request.  Because the statute and regulations thereunder
have evolved over time, however, an overview of the applicable
provisions is in order.

Prior to the enactment of the American Jobs Creation Act of
2004 ("2004 Jobs Act"), Pub. L. No. 108-357, 118 Stat. 1418
(codified at 26 U.S.C. § 1 et seq.), the list maintenance rules
required "sellers" and "organizers" of a "potentially abusive tax
shelter" to maintain a list identifying each person who purchased
an interest in the tax shelter.  26 U.S.C. § 6112(a) (2002)
(amended 2004).  A "potentially abusive tax shelter" was defined
to include 1) any tax shelter for which registration is required
under § 6111 and 2) any other entity, investment plan or
arrangement which is specified in the regulations as having a
potential for tax avoidance or evasion.  Id. § 6112(b).  The

organizer or seller was required to make the list available for inspection upon written request from the IRS.  Id. § 6112(c). Failure to comply with the list maintenance requirement subjected a taxpayer to a penalty of $50 per name omitted from the list with a maximum penalty of $100,000 per year.  Id. § 6708.

Congress, citing the refusal of some tax shelter promoters to provide the IRS with investor lists when requested, decided that the penalty was not meaningful and more effective tools for curbing the use of abusive tax avoidance transactions were needed.  H.R. REP. No. 108-548(I), at 271-72 (2004).  Thus, since the enactment of the 2004 Jobs Act, heftier and more time-sensitive penalties attach to a taxpayer's failure to maintain and provide the IRS with requested investor lists.  Any person required to maintain investor lists with respect to reportable transactions, and who receives a written request from the IRS but fails to make the lists available in 20 business days, may be assessed a $10,000 penalty for each day of failure after the 20th business day.  26 U.S.C. § 6708(a)(1) (2010).  No penalty is to be imposed, however, if the failure to produce the lists is due to "reasonable cause".[3]  Id. § 6708(a)(2).

Other provisions of the 2004 Jobs Act alter the definition of which taxpayers are subject to the list maintenance

---

[3] In no event is a failure to maintain a required list to be considered reasonable cause for failing to make the list available to the IRS.  H.R. REP. No. 108-548, at 272 n.273.

requirement and reportable transactions.  The person required to maintain lists is referred to as a "material advisor".  26 U.S.C. § 6112(a).  A material advisor is defined as any person who 1) provides any material aid, assistance or advice with respect to organizing, managing, promoting, selling, implementing, insuring or carrying out any reportable transaction and 2) directly or indirectly derives gross income for the advice or assistance in excess of an established threshold amount or such other amount as may be prescribed by the Secretary.  Id. § 6111(b)(1).  The established threshold amount is $50,000 in the case of a "reportable transaction" where substantially all of the tax benefits are provided to natural persons and $250,000 in any other case.  Id.  For "listed transactions", however, the regulations provide that the threshold amounts are reduced from $50,000 to $10,000 and from $250,000 to $25,000.  26 C.F.R. § 301.6111-3.

A "reportable transaction" is any transaction with respect to which information must be included with the taxpayer's return because the IRS has determined, under the regulations prescribed under § 6111, that the transaction is of the kind that has the potential for tax avoidance or evasion.  Id. § 6707A(c)(1).  A "listed" transaction is a kind of reportable transaction that is the same as or is substantially similar to a transaction that has been specifically identified by the IRS as a tax avoidance

transaction.  Id. § 6707A(c)(2).

The requirement that a material advisor maintain an investor list applies to transactions with respect to which material aid, assistance or advice is provided after the date of enactment of the 2004 Jobs Act, and the enhanced penalty for failing to maintain investor lists applies to requests made after the date of enactment.  H.R. REP. No. 108-548, at 272.

### 3.  Defendants' Liability under the List Maintenance Requirement

Daniel Carpenter designed and implemented the Benistar 419 Plan ("the Plan"), which was crafted to be a multiple employer welfare benefit trust providing pre-retirement life insurance to covered employees.  Benistar 419 is the sponsor of the Plan and BASI is its administrator.

BASI and Benistar 419 were subject to the list maintenance requirement, and thus liable for failing to provide the lists upon request from the IRS, if, at the relevant times between 2000 and 2006, 1) the Plan qualified as a "potentially abusive tax shelter" or a "reportable" or "listed" transaction, 2) BASI and Benistar 419 qualified as "organizers" and/or "sellers" or "material advisors" and 3) their failure to provide the lists requested was not excusable for "reasonable cause".

### a.  Potentially Abusive Tax Shelter and Reportable/Listed Transactions

Under the Tax Code during all times relevant to the instant

-15-

proceeding, whether under the rubric of a "potentially abusive tax shelter" or a "reportable" or "listed" transaction, any transaction that was specified in the regulations as having a potential for tax avoidance triggered the list maintenance requirement.  One such tax avoidance transaction identified by the regulations since the year 2000 is a transaction "substantially similar" to that described in Notice 95-34.  <u>See</u> IRS, Notice 2000-15, "Listed Transactions", 2000-12 I.R.B. 826 (Mar. 20, 2000); IRS, Notice 95-34, "Tax Problems Raised by Certain Trust Arrangement Seeking to Qualify for Exemption from Section 419", 1995-23 I.R.B. 10 (June 5, 1995).  Notice 95-34 describes the characteristics of certain trust arrangements that falsely purport to qualify as multiple employer welfare benefit funds exempt from Sections 419 and 419A.  Those sections impose strict limits on the amount of tax-deductible prefunding permitted for contributions to a welfare benefit fund.

The government contends that the Plan administered by Benistar 419 and BASI is substantially similar to the transaction described in Notice 95-34 and thus triggers the list maintenance requirement.  Its position derives substantial support from a decision of the U.S. Tax Court in which that Court deemed the Plan to be a listed transaction after determining it obtained similar kinds of tax benefits and was factually similar to the transaction described in Notice 95-34.  <u>See</u> <u>McGehee Family</u>

Clinic, P.A. v. Comm'r of Internal Revenue, Nos. 15646-08, 15647-08, 2010 WL 3583386, at *4 (U.S. Tax Court Sept. 15, 2010).

Benistar 419 does not set forth specific facts to dispute that contention but instead argues that 1) the government cannot prove the Plan meets various requirements of a "tax shelter" listed in former § 6111 and 2) prior to November, 2009, disclosure of a transaction "substantially similar" to a "listed transaction" was not required.

Neither contention is tenable. First, the government need not prove the Plan meets the definition in superceded § 6111 if it is able to demonstrate that the alternative definition of a "potentially abusive tax shelter" under superceded § 6112 is met. The latter specifically includes plans of the kind the Secretary determines by regulations as having a potential for tax avoidance. Second, transactions that were substantially similar to listed transactions have required disclosure since 2000. The relevant regulations effective in 2000 provided that, for purposes of the list requirement, a tax shelter includes

> any transaction a significant purpose of the structure of
> which is the avoidance or evasion of Federal income taxes
> within the meaning of ... § 301.6111-2T(b).

26 C.F.R. § 301.6112-1T, A-4 (2000). Under § 301.6111-2T(b), the avoidance or evasion of taxes was considered a significant purpose of the structure of the transaction if the transaction was

the same as or substantially similar to one of the types of transactions that the [IRS] has determined to be a tax avoidance transaction and identified by notice, regulation, or other form of published guidance as a listed transaction for purposes of section 6111.

Thereafter, beginning in 2003, a potentially abusive tax shelter for purposes of the list maintenance requirement was explicitly defined as a transaction that has a potential for tax avoidance or evasion, including any listed transaction. 26 C.F.R. § 301.6112-1 (2003). A listed transaction was then defined, as it is now, as a transaction which is the same as or substantially similar to a transaction that has been specifically identified by the IRS as a tax avoidance transaction.

Because defendants' contentions regarding the government's burden and the history of the disclosure requirement are without merit, and because they have offered no specific facts rebutting the government's evidence that the Plan is "substantially similar" to the tax avoidance transaction described in Notice 95-34, the Court concludes that, as a matter of law, the Plan prompted the list maintenance requirement during the relevant period.

b. <u>Organizers/Sellers and Material Advisors</u>

Even though the Plan was a listed transaction, BASI and Benistar 419 also must be shown to have qualified as 1) "organizers" and/or "sellers" or 2) "material advisors" at the relevant times between 2000 and 2006 in order to be liable under

the list maintenance requirement.

The government contends that BASI and Benistar 419 were "organizers" and/or "sellers" within the meaning of the Tax Code prior to the enactment of the 2004 Jobs Act, and thereafter were "material advisors" within the meaning of the current law.

BASI and Benistar 419 do not address whether they ever qualified as organizers and/or sellers under the prior law because they contend the government only seeks to hold them liable as "material advisors". Seizing upon this mistaken interpretation of the government's claim, defendants argue that the liens fail because the government cannot prove that 1) BASI ever made a "tax statement" or 2) Benistar 419 directly or indirectly derived gross income for its advice or assistance in excess of the established threshold amount. Such proof is required to prove that either entity was a "material advisor".

The government clearly seeks to hold the defendants liable as organizers and/or sellers of a potentially abusive tax shelter, and the current list disclosure requirement applies to 1) any person required to maintain a list under current § 6112(a), i.e., "material advisors" with respect to a "reportable" or "listed" transaction, and 2) any person who was required to maintain a list under superceded § 6112(a), i.e., "organizers" and "sellers" of a "potentially abusive tax shelter". 26 U.S.C. § 6112(b). Because neither defendant has

offered any rebuttal to the government's evidence that they qualified as organizers and/or sellers under superceded § 6112, there is no material dispute that they did so qualify.

The Court also rejects BASI's contention that it cannot be held liable as a material advisor based upon the doctrines of claim and/or issue preclusion due to a previous ruling in a related case by United States District Judge Janet C. Hall in the District of Connecticut.  See Benistar Admin Services, Inc. v. United States of America, No. 10-1320 (Telephonic Ruling, Mar. 31, 2011).  In that case, BASI contested the legality of the government's tax lien and moved to enjoin its enforcement.  Judge Hall denied the motion for injunctive relief and, in so doing, rejected several of the legal arguments BASI and Benistar 419 raise again here in their motions for summary judgment.

Judge Hall also noted, however, that the government had orally conceded that BASI had never made a tax statement.  Based upon that concession and the record then before her, Judge Hall held that the government could not establish that BASI was subject to the list maintenance requirement between 2003 and 2006, the period during which the regulations required an entity to make a tax statement in order to be required to maintain investor lists.  Nonetheless, she denied BASI's motion after concluding that BASI could be shown to qualify as an "organizer" of a "potentially abusive tax shelter" at some point between 2000

and 2003 and thus be found liable for failure to provide requested lists during that period. Ultimately, the Connecticut action was decided in the government's favor.

The holding in the Connecticut case does not somehow foreclose the government from proving, in the instant action, that BASI was subject to the list maintenance requirement between 2003 and 2006. First, the doctrine of claim and issue preclusion apply only where there has been a final judgment on the merits. Grella v. Salem Five Cent Savings Bank, 42 F.3d 26, 30 (1st Cir. 1994). Dicta in a ruling on a motion for a preliminary injunction hardly qualifies. Second, the government's concession was for purposes of that hearing and does not bind it in this proceeding. It will be treated as an ordinary (rather than a judicial) admission which can be contradicted by other evidence. See Gonzalez v. Walgreens Co., 918 F.2d 303, 305 (1st Cir. 1990); Fidelity & Deposit Co. of Md. v. Hudson United Bank, 653 F.2d 766, 777 (3d Cir. 1981).

Finally, the government has offered substantial evidence to support its contention that BASI and Benistar 419 qualify as "material advisors" within the meaning of the current law. As discussed above, a taxpayer is a material advisor if he 1) provides any material aid, assistance or advice with respect to organizing, managing, promoting, selling, implementing, insuring or carrying out any reportable transaction and

2) directly or indirectly derives gross income for the advice or assistance in excess of an established threshold amount. The first prong requires proof that the subject taxpayer made a "tax statement", defined as:

> any statement ... oral or written, that relates to a tax aspect of a transaction that causes the transaction to be a reportable transaction.

26 C.F.R. § 301.6111-3. Under the second prong,

> all fees for a tax strategy or for services for advice (whether or not tax advice) or for the implementation of a reportable transaction are taken into account.

Id. All of the surrounding facts and circumstances must be scrutinized when determining whether "consideration received in connection with a reportable transaction constitutes gross income derived directly or indirectly for aid, assistance, or advice." Id.

Here, the government has proffered deposition testimony, company agreements, and financial and promotional documents from which a jury could infer that both prongs of the definition have been satisfied, including that BASI made a tax statement and that Benistar 419 received income in excess of the threshold amount. In light of the Court's conclusion that the Plan qualified as a "listed transaction", the government here need only establish that BASI and Benistar 419 derived income in excess of the lower threshold amounts.

Nevertheless, the government's evidence and supporting

arguments are ambiguous with respect to which agreements were in fact operative at any given time, which statements were made when and what compensation was in fact rendered for material aid, assistance or advice.  The government will therefore be compelled to resolve such ambiguities and prove that the respective applicable standards were met to the satisfaction of the jury.

c.   Reasonable Cause

Section 6708 of Title 26 of the United States Code provides that no penalty for failure to disclose a required client list shall be imposed on a day that the taxpayer can prove reasonable cause for failure to disclose.  Thus, if the failure of BASI and Benistar 419 to provide the requested lists was due to reasonable cause, the penalty assessed against them is invalid.

BASI and Benistar contend that the record demonstrates the requisite reasonable cause and thus the tax penalties are invalid.  Their proof consists of 1) a letter, dated December 19, 2003, from Attorney John H. Reid, III, opining that Benistar 419 is not subject to the list maintenance requirement ("the Reid opinion letter") and 2) the inclusion of a reference to a "year/end period" of 2002 in the 2006 list requests and the 2009 lien notices.

That evidence falls woefully short of the requisite reasonable cause.  First, Benistar 419 has established only that the Reid opinion letter exists.  It has offered no evidence that

it actually relied on that letter, let alone that any actual reliance was reasonable under all the surrounding facts and circumstances. As the government points out, the evidence suggests instead that the defendants made a calculated decision not to provide an investor list to the IRS under any circumstances. For example, Daniel Carpenter testified that

> the only thing that we have never turned over to the service and we maintain that we will never turn over to the service are the names of the participants and the names of the participating employers.

Furthermore, Wayne Bursey, an officer of Benistar 419, wrote in a letter to Plan participants in 2005 that Benistar 419 had been able to fend off "improper and illegal inquiry" from the IRS into the names of Plan participants and further vowed that it would "never surrender the names of [its] Participating Employers or Plan Participants."

Second, although BASI and Benistar 419 contend that the year/period reference indicates that the penalties arise entirely from defendants' actions in 2002, the government responds that the date is simply a placeholder for administrative purposes and refers only to the calendar year during which the investigation was opened. BASI and Benistar 419 have not shown that it was reasonable for them to interpret the request as requiring them to produce only those investor lists they were required to maintain in 2002, especially considering the fact that Daniel Carpenter is a lawyer with experience in tax law. In any event, and more

germanely, neither defendant has established that it was not required to maintain investor lists in 2002.

Thus, defendants' motions for summary judgment on the grounds of reasonable cause fail. Nonetheless, construing the record in the light most favorable to the defendants for purposes of the government's motion for partial summary judgment, the Court concludes that there is a genuine issue of material fact with respect to the reasonable reliance and/or interpretation of the government's 2006 requests as applying only to the tax year 2002. Thus, summary judgment will be withheld from either side on the issue of reasonable cause.

In summary, the Court concludes that the Plan was a listed transaction and that the defendants qualified as "organizers" and/or "sellers" within the meaning of the superceded law. There remains a genuine issue of material fact for the jury, however, with respect to whether 1) defendants qualified as "material advisors" and 2) their failure to provide lists was excusable for reasonable cause. Accordingly, the defendants' motions for summary judgment will be denied and the government's motion for partial summary judgment will be allowed, in part, and denied, in part.

### 4. The Remaining Arguments of BASI and Benistar 419

Finally, for the reasons discussed below, defendants' remaining arguments concerning due process and the amount of the

penalties assessed against them do not entitle them to summary
judgment.

a.   <u>Penalties Assessed</u>

BASI and Benistar 419 contend that, even if they were liable
to maintain investor lists, the penalty assessed against them is
excessive because any failure on their part to provide required
lists prior to enactment of the 2004 Jobs Act should have been
calculated based on the penalty applicable during that period.
As discussed above, the current penalty is $10,000 per day
commencing 20 business days after a taxpayer's failure to deliver
requested client lists whereas the former penalty was $50 per day
with a maximum penalty of $100,000 each year.

The Court concludes that this defense fails as a matter of
law and thus cannot support either defendant's motion for summary
judgment.  The current penalty applies where a person required to
maintain a list under § 6112(a) fails to make such list available
to the IRS in accordance with § 6112(b).  A written request for
disclosure under § 6112(b) requires any person who is required to
maintain a list under § 6112(a), or who <u>was</u> required to maintain
a list under that section "as in effect before the enactment of
the American Jobs Creation Act of 2004", to make such list
available for inspection.  The clause "as in effect before the
enactment of the American Jobs Creation Act of 2004" was
specifically added in 2005, <u>see</u> Golf Opportunity Zone Act of

-26-

2005, Pub. L. No. 109-135, § 403(z), and was intended to clarify that

> the penalty under section 6708 for failing to comply with the section 6112 list maintenance requirements applies to both (1) material advisors with respect to reportable transactions under present-law section 6112, and (2) organizers and sellers of potentially abusive tax shelters under prior-law section 6112.

JOINT COMM. ON TAXATION, "Technical Explanation of the Revenue Provisions on H.R. 4440", at 87-88 (Dec. 16, 2005). Thus, the current penalty is intended to apply to a taxpayer who fails to comply with a request for disclosure made after the enactment of the 2004 Jobs Act, regardless of whether that taxpayer was required to maintain such a list pursuant to the current or former versions of § 6112(a).

Moreover, such an interpretation does not, as defendants contend, result in an impermissible retroactive application of the penalty. The House Committee Report clearly states that "the provision imposing a penalty for failing to maintain investor lists applies to _requests_ made after the date of enactment." H.R. REP. No. 108-548(I), at 271-72 (2004) (emphasis added). The tax penalties were thus assessed against BASI and Benistar 419 for their failure to comply with the 2006 list request. Each entity was on notice, at least as of 2005, that the current, heightened penalties would attach to unreasonable refusals to disclose required lists upon request from the IRS and that

> in no event is a failure to maintain a required list to

be considered reasonable cause for failing to make the list available to the IRS.

Id. at 272 n.273.

As United States District Judge Hall observed when rejecting the same argument in the Connecticut action,

> Even if the company had elected not to create and maintain lists prior to 2004, in light of the lower statutory penalties, ... nothing on the record [suggests] that [BASI] couldn't have created and maintained the required list starting in 2004, even lists going back to 2000, once it was on notice of heightened penalties for failure to produce such a list upon request and thus avoid the penalty for failure to produce the lists in 2006.

Benistar Admin Services, Inc., supra.  This Court agrees with that rationale and concludes that it was appropriate for the government to calculate the penalty assessment pursuant to the current statute.

### b.   Due process

Defendants contend that the government, in initiating this action, has violated its statutory obligation under 26 U.S.C. § 6330(e)(1) to suspend "levy actions" while a Collection Due Process ("CDP") hearing is pending.  That statute provides that

> if a [CDP] hearing is requested ... the levy actions which are the subject of the requested hearing ... shall be suspended for the period during which such hearing, and appeals therein, are pending.

Defendants fail to appreciate, however, the fact that the Tax Code provides the government with two distinct means by which to collect delinquent taxes: 1) pursuant to § 7403, it may institute

a lien-foreclosure suit in federal court and 2) pursuant to § 6331, it may collect by administrative levy.  United States v. Nat'l Bank of Commerce, 472 U.S. 713, 720 (1985).  "The levy is a provisional remedy and typically does not require any judicial intervention."  Id.  (internal quotation omitted).  It is defined as including "the power of distraint and seizure by any means." 26 U.S.C. §§ 6331(b), 7701(a)(21).

Clearly, a request for a CDP hearing requires only that the government suspend levy actions, not lien-foreclosure actions in which a defendant has a full opportunity to contest the merits of the underlying assessment.  Indeed, the treasury regulations promulgated under 26 U.S.C. § 6330 specifically provide that, when a CDP hearing is pending, the government "may take other non-levy collection actions such as initiating judicial proceedings to collect the tax shown on the CDP Notice ...."  26 C.F.R. § 301.6330-1(g)(2); see also 26 U.S.C. § 6502(a).

The Court therefore concludes that the government's action fully comports with the requirements of due process and that the defendants' due process argument fails as a matter of law.

**ORDER**

In accordance with the foregoing Memorandum,

1) Plaintiffs' motion to strike and for sanctions (Docket No. 291) is **DENIED;**

2) Defendants' motions to strike (Docket Nos. 349 and 356) are **DENIED;**

3) the motions for summary judgment with respect to Plaintiffs' First Amended Complaint filed by Benistar Admin Services, Inc. (Docket No. 276), Benistar 419 Plan Services, Inc. (Docket No. 278), Step Plan Services, Inc. (Docket No. 280) and Daniel Carpenter (Docket No. 284) are **DENIED;**

4) the motion for summary judgment with respect to Plaintiffs' First Amended Complaint filed by Molly Carpenter (Docket No. 282) is **ALLOWED;**

5) the motions for summary judgment with respect to the government's tax lien claim filed by Benistar Admin Services, Inc. (Docket No. 333), Benistar 419 Plan Services, Inc. (Docket No. 334) and the remaining defendants (Docket No. 335) are all **DENIED;** and

6) the government's motion for partial summary judgment against Benistar Admin Services, Inc. and Benistar 419 Plan Services, Inc. (Docket No. 332) is, with respect to the Benistar Plan's status as a listed transaction from February 28, 2000 to January 20, 2006 and the defendants' qualification as "organizers" and/or "sellers" within the meaning of the superceded law, **ALLOWED;** but is, with respect to the defendants' qualification as "material advisors" and the issue of reasonable cause, **DENIED.**

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated February 17, 2011